**ATTORNEYS FOR APPELLANT**

Ronald J. Waicukauski
Jana K. Strain
Price Waicukauski & Riley, LLC
Indianapolis, IN

Michael D. Weisman
Rebecca P. McIntyre
Weisman & McIntyre
Boston, MA

**ATTORNEYS FOR APPELLEES**

Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Heather L. Hagan
Deputy Attorney General

Julie Brubaker
Deputy Attorney General

TAX FOUNDATION

Joseph D. Henchman
Washington, DC

John M. Mead
Leeuw Oberlies & Campbell, P.C.
Indianapolis, IN

**ATTORNEYS FOR AMICI CURIAE**

NAT'L ACCESS NETWORK, EDUC. LAW CENTER,
AND THE RURAL SCHOOL AND COMM. TRUST,
INC.

Jerry Garau
Findling Garau Germano & Pennington, P.C.
Indianapolis, IN

Molly A. Hunter
Dir., Nat'l ACCESS Network
New York, NY

Ellen Boylan
Educ. Law Center
Newark, NJ

Amanda G. Adler
Educ. Finance Center, The Rural School and
Comm. Trust, Inc.
Columbia, SC



FILED
Jun 02 2009, 11:32 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-0809-CV-525

PHILIP A. BONNER, A MINOR, BY PARENTS AND NEXT FRIENDS, JOSEPH AND LATANYA BONNER;
WILLIAM THOMAS BOBO, A MINOR, BY MOTHER AND NEXT FRIEND, CLARISSA WAN BOBO;
JOHN BROOKS, JR., A MINOR, BY FATHER AND NEXT FRIEND, JOHN BROOKS, SR.;
AARON W. CARVER, A MINOR, BY PARENTS AND NEXT FRIENDS, LESTER AND VANESSA CARVER;
THOMAS J. HARRIS, A MINOR, BY MOTHER AND NEXT FRIEND, PATRICIA HARRIS;
DEMI MURRY, A MINOR, BY GRANDPARENTS AND NEXT FRIENDS, PATRICIA AND CHARLES MURRY;
DAMEESHA FLETCHER, A MINOR, BY MOTHER AND NEXT FRIEND, LORETTA FLETCHER;
BRENDAN JOHNSON, A MINOR, BY MOTHER AND NEXT FRIEND, AYANA JOHNSON; AND
ALBERT SERNA, A MINOR, BY PARENTS AND NEXT FRIENDS, BERTH AND CIRILO SERNA,[1]

*Appellants (Plaintiffs),*

v.

MITCH DANIELS, GOVERNOR, STATE OF INDIANA, AND CO-CHAIR OF THE EDUCATION
    ROUNDTABLE;
TONY BENNETT, INDIANA STATE SUPERINTENDENT OF PUBLIC INSTRUCTION, CHAIR OF THE STATE
    BOARD OF EDUCATION, AND CO-CHAIR OF THE EDUCATION ROUNDTABLE; AND
INDIANA STATE BOARD OF EDUCATION,                    *Appellees (Defendants).*

---

[1] The plaintiffs' caption appends the phrase "On Behalf of Themselves and All Others Similarly Situated."
Their filed complaint was styled as a class action lawsuit, but the trial court dismissed the complaint
before determining whether to permit the cause to be maintained as a class action. Ind. Trial Rule 23(C).

Appeal from the Marion Superior Court, No. 49D01-0604-PL-16414
The Honorable Cale J. Bradford, Judge
On Transfer from the Indiana Court of Appeals, No. 49A02-0702-CV-188

**June 2, 2009**

**Dickson, Justice.**

The plaintiffs/appellants, a group of Indiana public school students, appeal the trial court's dismissal of their complaint, which sought a declaratory judgment to establish that the Indiana Constitution imposes an enforceable duty on state government to provide a standard of quality education to public school students and that such duty is not being satisfied. The Court of Appeals reversed. Bonner v. Daniels, 885 N.E.2d 673 (Ind. Ct. App. 2008). We granted transfer and now affirm the trial court. Although recognizing the Indiana Constitution directs the General Assembly to establish a general and uniform system of public schools, we hold that it does not mandate any judicially enforceable standard of quality, and to the extent that an individual student has a right, entitlement, or privilege to pursue public education, this derives from the enactments of the General Assembly, not from the Indiana Constitution.

The plaintiffs' declaratory judgment action sought a judicial declaration that Indiana's system of school financing violates three provisions of the Indiana Constitution: the Education Clause (Article 8, § 1), the Due Course of Law Clause (Article 1, § 12), and the Equal Privileges and Immunities Clause (Article 1, § 23).[2] The defendants sought dismissal under Trial Rule 12, and the trial court dismissed the action as to all defendants. We find Rule 12(B)(6) dispositive,[3]

_____

[2] The plaintiffs use Roman numerals to identify the articles of the Indiana Constitution. In contrast, we refer to them by the Arabic numerals that were used by the framers. To view the original document, visit The Digital Collections of IUPUI University Library, http://indiamond6.ulib.iupui.edu/cdm4/document.php?CISOROOT=/ISC&CISOPTR=7494&REC=12 (last visited Mar. 30, 2009); for print transcript, see Charles Kettleborough, I CONSTITUTION MAKING IN INDIANA 295-375 (Ind. Historical Bureau in Indianapolis ed. 1971) (1916), *available at* http://www.in.gov/history/2473.htm (last visited Mar. 30, 2009).

[3] Indiana Trial Rule 12(B)(6) permits dismissal for "[f]ailure to state a claim upon which relief can be granted."

and affirm the trial court's conclusion that the plaintiffs' complaint failed to state a claim upon which relief can be granted, as explained more fully below.

The function of an appellate court in reviewing a trial court judgment granting a Rule 12(B)(6) motion to dismiss was summarized in City of New Haven v. Reichhart, 748 N.E.2d 374 (Ind. 2001):

> It is well settled that a complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. We view the pleadings in the light most favorable to the nonmoving party and draw every reasonable inference in favor of that party. When reviewing a motion to dismiss for failure to state a claim, this court accepts as true the facts alleged in the complaint. We will affirm a successful Trial Rule 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint. We will affirm the trial court's ruling if it is sustainable on any basis found in the record.

*Id.* at 377-78 (internal citations omitted).

In this appeal, the plaintiffs argue that the trial court's dismissal erroneously deprived them of the right to seek a judicial declaration that the Indiana Constitution imposes an enforceable duty on government to provide an adequate quality education and that Indiana's current system of school financing fails to satisfy this duty. We must determine whether their complaint states a set of facts, which if true, would support the declaratory relief they request. Critical to the plaintiffs' claims is their contention that the Indiana Constitution creates an enforceable duty on state government to provide an adequate quality education.

The plaintiffs' complaint opens by describing the nature of the action and summarizing that it seeks two judicial declarations:

> [1] that the Indiana Constitution imposes an enforceable duty on the General Assembly to provide an education that prepares all of Indiana's children – rich or poor, white, black or Hispanic, with or without special needs, and with or without English proficiency – to function in a complex and rapidly changing society, to discharge the duties and responsibilities of citizenship, and to compete successfully with their peers for productive employment and opportunities for advancement through higher education.

> [2] that the Defendants are violating their constitutional duty because Indiana's current system of financing education violates the Indiana Constitution, with the result that the plaintiffs, and the tens of thousands of other Indiana schoolchildren whom plaintiffs

represent, are not receiving their constitutional entitlement of education as intended by the framers of the Constitution.

Appellants' App'x at 18. Their complaint designates three specific counts as separate causes of action, each alleging that Indiana's method of financing its public schools violates a provision of the Indiana Constitution. Count One asserts that the financing system violates duties imposed upon the State by the Education Clause, Article 8, Section 1. Count Two alleges that the financing system deprives the plaintiffs of a "fundamental right to an education" protected under the Due Course of Law Clause, Article 1, Section 12. And Count Three claims that the financing system violates the Equal Privileges Clause, Article 1, Section 23, by granting the constitutionally-promised education to some students while denying it to others. The complaint concludes by requesting a judgment declaring that the Indiana system of financing elementary and secondary public school education violates the Indiana Constitution's Education Clause, Due Course of Law Clause, and Equal Privileges Clause, and it also requests attorney fees. Appellants' App'x at 60. The plaintiffs emphasize that they are not seeking a judicial mandate for a particular school funding system, but express that what they seek "is a determination that the current system falls woefully short of the requirements of the Indiana Constitution." Br. of Appellants at 14.

Interpreting our Constitution "involves a search for the common understanding of both those who framed it and those who ratified it." Collins v. Day, 644 N.E.2d 72, 75-76 (Ind. 1994); *see also* McIntosh v. Melroe Co., 729 N.E.2d 972, 974 (Ind. 2000). "In construing the Indiana Constitution . . . [we] look to 'the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions.'" Ajabu v. State, 693 N.E.2d 921, 928-29 (Ind. 1998), *quoted by* McIntosh, 729 N.E.2d at 974. The actual language, however, is particularly valuable because it "tells us how the voters who approved the Constitution understood it, whatever the expressed intent of the framers in debates or other clues." McIntosh, 729 N.E.2d at 983.

### Education Clause – Art. 8, § 1

In their complaint and in this appeal, the plaintiffs focus almost exclusively on the

4

Education Clause, Article 8, Section 1, of Indiana's Constitution of 1851, which states:

> Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government; *it shall be the duty of the General Assembly* to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and *to provide, by law, for a general and uniform system of Common Schools*, wherein tuition shall be without charge, and equally open to all.

Ind. Const. art. 8, § 1 (emphasis added).  The plaintiffs' complaint, and their appellants' brief, do not allege violation of the "general and uniform system" or the "equally open to all" requirements, nor of any other specific provision in the Education Clause.  Instead, the plaintiffs' claim of unconstitutionality is a general one—that the Clause imposes a duty to provide public school students with an education of satisfactory quality and that Indiana state government, because of its system of public school financing, has failed to satisfy such duty.  The plaintiffs specifically insist that their claims are "brought under the entire Education Clause," and not focused on any single specific phrase in the Clause.  Appellants' Reply Br. at 6.

After its precatory introduction stressing the importance of knowledge and learning to the preservation of a free government,[4] the text of the Education Clause expresses two duties of the General Assembly.  The first is the duty to *encourage* moral, intellectual, scientific, and agricultural improvement.  The second is the duty to *provide* for a general and uniform system of open common schools without tuition.  The first is general and aspirational; the second is more concrete—the assignment of a specific task with performance standards ("general and uniform," "tuition without charge," and "equally open to all").  Judicial enforceability is more plausible as to the second duty than the first.

This duty to provide for a system of common schools, as it appears in our current Indiana Constitution of 1851, is remarkably similar to the duty assigned by Indiana's first Constitution in

---

[4] This language bears substantial similarity to its predecessors.  The educational provision in Indiana's 1816 Constitution began: "Knowledge and learning generally diffused, through a community, being essential to the preservation of a free Government, and spreading the opportunities, and advantages of education through the various parts of the Country, being highly conducive to this end, . . . ."  Ind. Const. of 1816, art. 9, § 1.  And during Indiana's territorial government, the governing document was the Northwest Ordinance of 1787, Article III of which opened with: "Religion, morality, and knowledge, being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."  Northwest Ordinance of 1787, art. III, 32 Journals of the Continental Congress 334, 340 (act of Congress under the Articles of Confederation, recodified at 1 Stat. 50, 52).

1816:

> Sect. 2. It shall be the duty of the General [A]ssembly, as soon as circumstances will permit, to provide, by law, for a general system of education, ascending in a regular gradation, from township schools to a state university, wherein tuition shall be gratis, and equally open to all.

Ind. Const. of 1816, art. 9, § 2. A comparison of the two suggests that the 1851 revision was actually less expansive, referring only to a system of common schools instead of a general system of education through college, and describing tuition as "without charge" instead of its Latin equivalent, "gratis." Unlike the 1816 Constitution, however, its 1851 successor created the Common School Fund and prescribed a methodology for financial support, and it and created the position of State Superintendent of Public Instruction, whose duties "shall be prescribed by law." Ind. Const. art. 8, § 8. Like its 1816 predecessor, the text of the 1851 Education Clause does not delineate or identify any specific outcome standards to be achieved by the General Assembly's performance of its duty to provide for a system of common schools.

As can be seen from the text of the Education Clause, its language speaks only of a general duty to provide for a system of common schools and does not require the attainment of any standard of resulting educational quality. The phrases "general and uniform," "tuition . . . without charge," and "equally open to all" do not require or prescribe any standard of educational achievement that must be attained by the system of common schools. The Clause says nothing whatsoever about educational quality.

As to the provision's history and purpose, we are guided by Justice Rucker's comprehensive review of the history of Article 8 in Nagy v. Evansville-Vanderburgh School Corporation, 844 N.E.2d 481 (Ind. 2006), which notes that the Constitutional Convention of 1850-51 assembled in "a lively and sometimes acrimonious public debate over the establishment of free common schools," and that its delegates spoke of their desire to establish free schools with tuition "subsidized through public funding sources." Id. at 487, 491. At the close of the Constitutional Convention, the delegates adopted an address summarizing the proposed new Constitution to the Indiana voters who were being asked to ratify it. As to the Education Clause, the approved address described its "principal change" as "the abolition of county seminaries, and the application of the funds to common schools," and continued: "It is also provided that the

6

legislature shall establish a uniform system of common schools, wherein tuition shall be free." The summary then focused on sources of revenue for the common school fund. Kettleborough, *supra* note 2, at 410. But it did not state or suggest that Article 8 intended to impose upon government any duty to educate children to any particular standard of achievement.

After reviewing the Article's political and constitutional history as well as subsequent appellate opinions, this Court concluded in Nagy as follows:

> [D]etermining the components of a public education is left within the authority of the legislative branch of government. Article 8, Section 1 imperatively places upon the legislature, "by all suitable means . . . to provide, by law, for a general and uniform system of Common Schools." But this imperative leaves to that branch considerable discretion in determining what will and what will not come within the meaning of a public education system. "The duty rests on the legislature to adopt the best [school] system that can be framed; but they, and not the courts, are to judge what is the best system. There is this limitation on legislative power: the system must be 'a general and uniform one,' and tuition must be free and open to all; but the extent of this limitation is this, and nothing more."

Nagy, 844 N.E.2d at 491 (quoting Robinson v. Schenck, 102 Ind. 307, 318, 1 N.E. 698, 705 (1885)).

The plaintiffs argue that the totality of the Education Clause "demonstrates the centrality of education to civic life in Indiana." Br. of Appellants at 16. They urge that its surrounding history reflects a prevailing public sentiment in 1850 that a public education system was needed to eliminate illiteracy and to protect Indiana's democracy. While there is strong evidence of these general concerns, the plaintiffs point to no historical evidence that the framers intended more than their historic accomplishment of requiring the legislature to establish a system of free common schools. The historical facts do not evidence any intention to require the establishment of a public education system with any particular standards of educational output. We decline the plaintiffs' invitation to amplify the words and meaning of our Constitution as crafted by its framers and approved by its ratifiers.

Guided as we are by the text of the constitutional provision in the context of its history, we conclude that the Education Clause of the Indiana Constitution does not impose upon government an affirmative duty to achieve any particular standard of resulting educational

7

quality. This determination is delegated to the sound legislative discretion of the General Assembly. And in the absence of such a constitutional duty, there is no basis for the judiciary to evaluate whether it has been breached. The plaintiffs are not entitled to the declaratory relief sought regarding the Education Clause.

## Other Constitutional Claims

While the principal focus of the plaintiffs' appeal is their claimed violation of the Education Clause, they also include less expansive arguments that Indiana's public school financing system violates the Indiana Constitution's Equal Privileges and Immunities Clause and its Due Course of Law Clause. Both of these claims are predicated on the plaintiffs' assertion that the Indiana Constitution grants them a fundamental constitutional right to receive an adequate public education. *See* Br. of Appellants at 34. Absent such a constitutional right, these other constitutional claims of the plaintiffs lack merit.

By its own terms, Article 8, concerning education, does not speak in terms of a right or entitlement to education. Rather, the Article relates to the aspirational goals and objectives assigned to the General Assembly as the legislative branch of Indiana government. Significantly, the drafters of our Constitution did not include any reference to education in Article 1, the Bill of Rights, which declares the rights of individuals in relation to government. It is the Bill of Rights that assures, for example, the rights of individuals to religious freedom; to speak, write, and print without government restraint; to trial by jury; to counsel and confrontation of witness in criminal cases; to bear arms, etc. Education is not among the enumerated individual rights. To the extent that an individual student may have a right, entitlement, or privilege to pursue public education, any such right derives from the enactments of the General Assembly, not from the Indiana Constitution.

We conclude that the framers and ratifiers certainly sought to establish a state system of free common schools but not to create a constitutional right to be educated to a certain quality or other output standard. In the absence of such a constitutional right to receive an adequate public education, the plaintiffs are not entitled to the declaratory relief sought regarding the Equal

8

Privileges or Due Course of Law Clauses of the Indiana Constitution.

## Conclusion

We hold that the facts stated by the plaintiffs' complaint, even if taken as true, would not support the relief requested and we therefore affirm the trial court's judgment granting the defendants' motion to dismiss.

Shepard, C.J., and Sullivan, J., concur. Boehm, J., concurs in result with separate opinion. Rucker, J., dissents with separate opinion.

**Boehm, Justice, concurring in result.**

Article 8, section 1 of the Indiana Constitution provides that it is the duty of the General Assembly to "provide, by law, for a general and uniform system of Common Schools."

I agree with Justice Rucker that this provision creates judicially enforceable standards. Courts are fully capable of determining whether a law is applied generally throughout the state. Similarly, whether a system is "uniform" is capable of judicial resolution. More generally, a requirement that a "system" be "general" and "uniform" is a standard that courts routinely address and find to be met or not. See, e.g., Mun. City of South Bend v. Kimsey, 781 N.E.2d 683 (Ind. 2003) (annexation statute applicable to only one county violated state constitution provision that laws shall be "general" and of "uniform" operation, Ind. Const. art. 4, § 23). It is no less enforceable than the Equal Protection Clause of the United States Constitution or the Equal Privileges Clause of the Indiana Constitution.

I agree with the majority, however, that the Indiana Constitution imposes no particular level of quality on the educational product of our schools. To be sure, the requirement to provide for a "general and uniform system of Common schools" requires that there be legislation providing educational opportunity for all Indiana children. But the plaintiffs understandably do not contend that the system we have is so bereft of educational value that it is not a "system of Common Schools" at all. And for whatever reason, the plaintiffs in this case have not chosen to assert that the system the General Assembly has provided by law is not general or lacks uniformity. Rather, they assert that the current system of public education from kindergarten through high school fails to provide a quality of education adequate to the needs of our children. This is not a claim that lends itself to resolution in a judicial forum. Surely any of a vast number of methods of funding and executing a system of public schools might be deemed adequate, but each raises a virtually endless list of conflicting considerations and policy choices on subjects ranging from funding options to educational theory. There are no readily identifiable standards to determine adequacy vel non of our system and the process of adjudication does not lend itself to resolution of the myriad balancing acts required to evaluate its adequacy. In my view, the claim that our present system is inadequate is simply too amorphous for judicial resolution.

In sum, I believe that article 8, section 1 of the Indiana Constitution is of the same general structure as the Equal Protection Clause of the Fourteenth Amendment and the Equal Privileges Clause of the Indiana Constitution. These provisions require that the General Assembly treat citizens evenhandedly, and prohibit some forms of arbitrary or discriminatory legislation. But in general they do not dictate the substance of any program, or require how it is to be carried out, so long as any disparate treatment is reasonably related to legitimate legislative goals. I therefore concur in the majority's holding that article 8, section 1 of the Indiana Constitution "does not mandate any judicially enforceable standard of quality" of the education to be provided by that system. For that reason I agree that this complaint was properly dismissed.

I believe there is a second problem with this complaint. The plaintiffs have chosen to sue the Governor and the Superintendent of Public Instruction. It is appropriate to sue executive officers to enjoin them from enforcing an unconstitutional statute. See, e.g., Clinic for Women, Inc. v. Brizzi, 837 N.E.2d 973 (Ind. 2005) (action against prosecutor to enjoin enforcement of statute alleged to violate state constitution); Bayh v. Ind. State Bldg. & Constr. Trades Council, 674 N.E.2d 176 (Ind. 1996) (action against governor and others to enjoin enforcement of statute alleged to violate state constitution). But the plaintiffs here do not seek to enjoin the state's funding of the current system. Rather, they seek affirmative relief in the form of a mandate to implement a system of public education that meets their standards. That is more than these defendants can deliver, even if they admitted the allegations of the complaint and agreed to a consent judgment. The General Assembly must first act to create a system, which can then be tested for conformity to the constitution.

In some circumstances, courts can properly go beyond simply enjoining the executive branch from proceeding under an unconstitutional statute and may also order equitable relief that, in effect, amounts to initiating a measure that is properly in the hands of the legislature. An example is redistricting of legislative districts where the legislative process has failed to act altogether, or the legislative product fails to meet a constitutionally mandated and judicially manageable standard such as relatively equal population. See, e.g., Prosser v. Elections Bd., 793 F. Supp. 859, 870–71 (W.D. Wis. 1992); Peterson v. Borst, 786 N.E.2d 668, 676 (Ind. 2003). But those instances are few and far between, and should be restricted to instances where the

2

legislative process has failed to address a constitutionally mandated subject, or failed to remedy a declared defect, or where the need for immediate correction of an unconstitutional condition makes legislative response unworkable. In any of these circumstances the courts should not attempt to mandate a specific result unless identification of an appropriate remedy is reasonably within the judiciary's reach.

In sum, the problems of Indiana's system of funding public schools may be as severe as the plaintiffs allege, but I see no reasonable prospect of a judicial remedy that would be effective and properly balance the many considerations involved in redesigning the state's educational system. The most the courts could order would be to direct the legislative and executive branches to go back to the drawing board and try again to construct an improved and constitutionally acceptable system of common schools. Because we are unable to articulate any clear or even vague direction as to what standards to apply in that endeavor, the courts should acknowledge that adequacy of education, like the level of taxation, is a matter the Constitution reserves to the legislative branch. I therefore concur in the majority's ruling that this complaint must be dismissed.

**Rucker, J., dissenting.**

I respectfully dissent. The majority notes, and I agree, that the text of the Education Clause expresses two duties of the General Assembly. The first is the duty to encourage moral, intellectual, scientific, and agricultural improvement. The second is the duty to provide for a general and uniform system of open common schools without tuition. And although the majority acknowledges, "Judicial enforceability is more plausible as to the second duty than the first," slip op. at 5, it nonetheless concludes that "the facts stated by the plaintiffs' complaint even if taken as true, would not support the relief requested," id. at 9. I am hard pressed to reconcile these two propositions. First, viewing the complaint in a light most favorable to the plaintiffs, the relief plaintiffs seek is simply a declaration that the education being provided to them and the system for funding that education fall short of the constitutional mandate to provide for a general and uniform system of open common schools. Second, contrary to the majority's view it appears to me that the facts plaintiffs allege in their complaint, which we must take as true for purposes of Trial Rule 12(b)(6), entitle plaintiffs to such a declaration.

In reaching its conclusion the majority focuses on the plaintiffs' assertion concerning "minimum standards of educational quality" to assert that the Education Clause "does not impose upon government an affirmative duty to achieve any particular standard of resulting educational quality." Slip op at 7. Even assuming the majority is correct, this reading of plaintiffs' forty-eight- page complaint is much too narrow in my view. Essentially, plaintiffs complain that defendants are abdicating their responsibility by not providing for a general and uniform system of education the Constitution demands. Assertions about educational quality are simply a component of plaintiffs' overall complaint.

In any event the idea that the Education Clause imposes a duty to meet a certain minimum standard of education is not particularly remarkable. See Abbeville County Sch. Dist. v. State, 515 S.E.2d 535, 540 (S.C. 1999) (reversing a motion to dismiss for failure to state a claim under the state Constitution's education clause holding that "the South Carolina Constitution's education clause requires the General Assembly to provide the opportunity for each child to receive a minimally adequate education"). The court emphasized:

> [T]he constitutional duty to ensure the provision of a minimally adequate education to each student in South Carolina rests on the legislative branch of government. We do not intend by this opinion to suggest to any party that we will usurp the authority of that branch to determine the way in which educational opportunities are delivered to the children of our State. We do not intend the courts of this State to become super-legislatures or super-school boards.

Abbeville, 515 S.E.2d at 541. See also Leandro v. State, 488 S.E.2d 249, 254 (N.C. 1997) (holding the North Carolina Constitution's provisions, "The people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right," N.C. Const. art. I, § 15, and, "The General Assembly shall provide . . . for a general and uniform system of free public schools . . . ," N.C. Const. art. IX, § 2(1), required the state to provide children with "an education that meets some minimum standard of quality").

I readily concede that whether plaintiffs can prevail in a trial on the merits of their complaint, or indeed whether they can survive summary judgment, is an open question. But to say in effect that plaintiffs have not presented a justiciable issue is simply wrong in my view. I would therefore reverse the trial court's grant of the defendant's motion to dismiss, and allow this matter to proceed.