**SAVE OUR SCHOOL: ELMHURST HIGH SCHOOL, an Indiana unincorporated association, Appellant–Plaintiff,**

v.

**FORT WAYNE COMMUNITY SCHOOLS and Fort Wayne Community Schools Board of School Trustees, Appellees–Defendants.**

No. 02A04–1012–PL–746.

Court of Appeals of Indiana.

June 23, 2011.

Transfer Denied Oct. 31, 2011.

Robert Owen Vegeler, Vegeler Law Office, LLC, Fort Wayne, IN, Attorney for Appellants.

Matthew J. Elliott, Beckman Lawson, LLP, Fort Wayne, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Save Our School: Elmhurst High School ("SOS") appeals the trial court's granting of the motion to dismiss SOS's complaint filed by Fort Wayne Community Schools and the Fort Wayne Community Schools Board of School Trustees (collectively "FWCS"). We affirm.

### Issues

The restated issues before us are:

I. whether FWCS's decision to close Elmhurst High School ("Elmhurst") is an action subject to judicial review as potentially violating the Indiana Constitution; and

II. whether that decision is subject to judicial review as an allegedly arbitrary and capricious governmental agency action.

## Facts

FWCS previously operated six high schools: Elmhurst, Snider, North Side, South Side, Northrop, and Wayne. However, on March 22, 2010, FWCS decided that it was necessary, for budgetary reasons, to close Elmhurst. Elmhurst students and faculty were to be transferred to Wayne, North Side, or South Side, beginning with the 2010–11 school year.

SOS is an association comprised of parents of children who attended Elmhurst, and also apparently other FWCS district property taxpayers. SOS contends that Wayne, North Side, and South Side are all poorer educational institutions, in terms of academic performance, than Elmhurst. In support of this contention, SOS pointed to such things as comparative ISTEP scores, graduation rates, and assessments by the Indiana Department of Education. SOS also disputes the financial and other reasons FWCS has given for choosing to close Elmhurst.

On June 14, 2010, SOS filed a complaint for declaratory judgment against FWCS, apparently seeking to force Elmhurst to remain open, although its prayer for relief was not clear on that point.[1] Before filing an answer, FWCS filed a motion to dismiss SOS's complaint. On November 17, 2010, the trial court dismissed the complaint. SOS now appeals.

## Analysis

Although FWCS's motion to dismiss was not transmitted to this court on appeal, the parties apparently agree that it was a motion to dismiss under Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief could be granted. Such a motion tests the legal sufficiency of the claim, not the facts supporting it. *Babes Showclub, Jaba, Inc. v. Lair*, 918 N.E.2d 308, 310 (Ind.2009). Review of a trial court's grant or denial of a motion under Rule 12(B)(6) is de novo. *Id.* "When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor." *Id.* A complaint may not be dismissed for failure to state a claim unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Id.*

Before turning to the merits, we briefly address FWCS's contention that SOS's appeal is moot. FWCS argues that at this point, it would be highly impracticable to reopen Elmhurst and that such an action in any event would only re-open the physical Elmhurst building and would not restore the identical faculty, staff, and students that had existed at Elmhurst before its closing. A case becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties. *Indiana High Sch. Athletic Ass'n, Inc. v. Durham*, 748 N.E.2d 404, 410 (Ind.Ct.App.2001). Even if we were to assume without deciding that this case is now moot, however, an exception to the mootness doctrine permits a court to decide a moot case on the merits if it involves

---

[1]. The filing of this complaint apparently followed an earlier complaint filed in state court, then removed to federal court, then dismissed by the federal court without prejudice.

a question of great public interest. *Id.* at 411–12. Such questions usually involve issues that are likely to recur. *Id.* at 412. Questions concerning the closing of schools for stated budgetary reasons are questions of great public interest and are likely to recur. Whether or not this case is moot, we will address it on the merits.

### I. Constitutional Claims

█ We first address SOS's argument that its complaint against FWCS adequately stated claims for violations of the Indiana Constitution—namely, the Education Clause of that document, as well as the Equal Privileges and Immunities Clause. The Education Clause is found in Article 8, Section 1 of the Indiana Constitution and states:

> Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government; it shall be the duty of the General Assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and to provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all.

The Equal Privileges and Immunities Clause is found in Article 1, Section 23, and states, "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

In its complaint, SOS alleged, "the Plaintiffs [sic] right to a general and uniform school system are being violated by the Defendants [sic] decision to close Elmhurst and forcing transfer to the three transferee high schools by denying a meaningful and lawful educational opportunity for the Plaintiffs and similarly situated Elmhurst students." App. p. 17. SOS additionally alleged, "The Defendants, pursuant to such an unlawful decision, deny the Plaintiffs a reasonable education that is adequate because it is not general and lacks uniformity." *Id.* SOS also contended that the Education Clause and Equal Privileges and Immunities Clause imposed a duty upon FWCS "to meet a certain minimal standard of education because a failing educational school and system provides no education at all and is not a system that is general and uniform as required by the Indiana Constitution." *Id.* at 17–18. SOS repeats these assertions on appeal; it also claims that the Education Clause "creates judicially enforceable standards by which the Defendants must provide such general and uniform school system to the Plaintiffs." Appellant's Br. at 13. Clearly, the underlying thrust of SOS's constitutional arguments is that courts may second-guess a school board's determination to close a certain school, based on considerations of the alleged academic inferiority of the schools that the board decides to keep open. Simply labeling its claim as one aimed at the "general and uniform" requirement of the Education Clause does not mask what is the clear substance of SOS's argument: that by being forced to attend schools other than Elmhurst, the students who used to attend there will not receive the "superior" level of schooling Elmhurst is alleged to have provided.[2]

Despite SOS's attempts to claim otherwise, we believe that its arguments are entirely foreclosed by our supreme court's decision in *Bonner ex rel. Bonner v. Daniels*, 907 N.E.2d 516 (Ind.2009). That case

---

**2.** FWCS argues that in any event that the influx of "higher performing" Elmhurst students and faculty into Wayne, North Side, and South Side will cause those schools' academic rating to improve.

concerned a challenge to the method by which the State funds public education. Specifically, the plaintiffs maintained that the Education Clause imposed a duty upon the government to provide a minimum quality of education to public school students and that the public school funding method failed to satisfy that duty. A majority of our supreme court undertook a thorough examination of the Education Clause's ratification and purpose and concluded:

> Guided as we are by the text of the constitutional provision in the context of its history, we conclude that the Education Clause of the Indiana Constitution does not impose upon government an affirmative duty to achieve any particular standard of resulting educational quality. This determination is delegated to the sound legislative discretion of the General Assembly. And in the absence of such a constitutional duty, there is no basis for the judiciary to evaluate whether it has been breached.

*Bonner*, 907 N.E.2d at 522. Justice Boehm filed an opinion concurring in result, but fully agreeing with the majority "that the Indiana Constitution imposes no particular level of quality on the educational product of our schools." *Id.* at 523 (Boehm, J., concurring in result). Justice Rucker dissented, believing that the majority had read the plaintiffs' complaint too narrowly, but also stating, "the idea that the Education Clause imposes a duty to meet a certain minimum standard of education is not particularly remarkable." *Id.* at 525 (Rucker, J., dissenting) (citing *Abbeville County Sch. Dist. v. State,* 335 S.C. 58, 515 S.E.2d 535 (1999)).[3]

In other cases, our supreme court has noted the Education Clause entrusts the legislative branch of government with "considerable discretion in determining what will and what will not come within the meaning of a public education system." *Nagy ex rel. Nagy v. Evansville–Vanderburgh Sch. Corp.,* 844 N.E.2d 481, 491 (Ind.2006). Additionally, the court has described the "general and uniform" limitation of the Education Clause as requiring that "the legislature shall not make an unequal distribution of money derived from a general levy, make an unequal general levy, or grant to some school corporations benefits or rights withheld from others. This is the general and uniform system contemplated by the Constitution." *Robinson v. Schenck,* 102 Ind. 307, 318, 1 N.E. 698, 705 (1885).

SOS relies almost exclusively upon Justice Rucker's dissent and Justice Boehm's concurrence in support of its argument that *Bonner* does not apply here. In any event, Justice Boehm's concurrence does not seem to support SOS's arguments. Justice Rucker's dissent provides such support, but of course, it is a dissent. We are bound to adhere to what the *Bonner* majority held. That majority, and arguably Justice Boehm as well, flatly rejected any notion that the Education Clause permits courts to make assessments as to whether a particular government decision or policy violates the Indiana Constitution because of an alleged negative impact on educational quality.

It is our opinion that *Bonner* leaves no room for recognizing a claim such as SOS wants to press. FWCS is continuing to operate a "general and uniform" public school system. It just happens to be operating it with one less high school than before. SOS's claim that FWCS closed

---

3. SOS states in its brief that our supreme court "fully embraced" relying on and citing to *Abbeville.* Appellant's Br. p. 20. That is an overstatement, as only one of the five justices cited to that case.

the "wrong" school or should not have closed Elmhurst at all, based on a comparison of the academic merits of Elmhurst, Wayne, North Side, and South Side, is not a cognizable Education Clause claim under *Bonner.*

It is true that *Bonner* dealt specifically with a claim that the governor, State superintendent of public instruction, and State board of education were violating the Education Clause, whereas here SOS is challenging the actions of FWCS, a political subdivision of the State. *See* Ind.Code §§ 36–1–2–10, –13. The difference in the governmental nature of the defendants is irrelevant, however. *Bonner* stated, "the Education Clause of the Indiana Constitution does not impose upon *government* an affirmative duty to achieve any particular standard of resulting educational quality." *Bonner,* 907 N.E.2d at 522 (emphasis added). FWCS is a governmental entity. As our supreme court observed many years ago, the General Assembly and others in State government essentially are entrusted with establishing broad guidelines for the establishment of a tuition-free, "general and uniform" system of public schools, while local school corporations must handle the particulars of running those schools on a day-to-day basis. *See Robinson,* 102 Ind. at 313–14, 1 N.E. at 702. We conclude that our supreme court, having already clearly held that lawsuits against State governmental officials regarding the quality of public education are not viable under the Indiana Constitution, would refuse to permit such suits to be filed against local school corporations such as FWCS.

■ We also note that SOS seems to claim that it has some kind of property interest in keeping Elmhurst open. Courts have recognized a property interest in a free public education generally. *See B.S. ex rel. Schneider v. Board of School Trustees, Fort Wayne Community*

*Schools,* 255 F.Supp.2d 891, 898 (N.D.Ind. 2003). SOS fails to develop a cogent argument, however, as to how this translates into a property interest in keeping one particular school open. *B.S.,* for instance, concerned due process rights in the context of school suspensions and expulsions, where a particular student's continued free public education is at risk. Here, none of the former Elmhurst students are being denied a continued free public education; they all have the opportunity to continue their schooling elsewhere in the FWCS district. As is often the case with school closings, which can be traumatic for students, many Elmhurst students likely would have preferred to stay where they were. That desire, however, does not translate into a protectable property interest in keeping the school open.

■ *Bonner* also disposes of SOS's claim under the Equal Privileges and Immunities Clause of the Indiana Constitution. It held that because the plaintiffs had no constitutional right to receive an "adequate" public education, they had no right to declaratory relief under the Equal Privileges and Immunities Clause. *Bonner,* 907 N.E.2d at 522. SOS's Equal Privileges and Immunities argument likewise must fail. In sum, SOS has failed to state a claim under either the Education or Equal Privileges and Immunities Clauses of the Indiana Constitution.

## II. *"Agency" Review*

■ SOS further contends that it is "entitled to relief under the common law doctrine of judicial review." Appellant's Br. p. 25. Essentially, SOS is arguing that FWCS is an administrative agency that rendered an administrative decision in closing Elmhurst, and that decision should be reversed as being arbitrary and capricious. As might be evident, SOS is borrowing terminology developed under the

Indiana Administrative Orders and Procedures Act ("AOPA") in making this claim.

SOS concedes, however, as it must, that FWCS is not an "agency" whose decisions fall under AOPA. An "agency" whose decisions are subject to review under AOPA does not include "a political subdivision" of the State. I.C. §§ 4–21.5–1–3, –12. "Political subdivision" is defined as a "municipal corporation or special taxing district," which in turn includes school corporations. I.C. §§ 36–1–2–10, –13.

In *Blanck v. Indiana Department of Correction*, 829 N.E.2d 505 (Ind.2005), our supreme court addressed whether a prison inmate was able to challenge the Department of Correction's enforcement (or lack of enforcement) of certain statutes regarding prisoner discipline. The court noted that any " 'agency action related to an offender within the jurisdiction of the department of correction' " was expressly excluded from the scope of reviewable agency actions under AOPA. *Blanck*, 829 N.E.2d at 510 (quoting I.C. § 4–21.5–2–5(6)). Given this clear expression of legislative intent, the court held that the prisoner had no private right of action to judicial review of prison disciplinary decisions. *Id.*

We expanded upon *Blanck* in *Hayes v. Trustees of Indiana University*, 902 N.E.2d 303 (Ind.Ct.App.2009), *trans. denied.* In *Hayes*, an Indiana University ("IU") employee sued IU after it terminated her employment. The employee's complaint alleged breach of contract by IU, and also sought "common law" judicial review of IU's action as an agency of the State. *Hayes*, 902 N.E.2d at 306. With respect to the "common law" judicial review claim, we noted that state educational institutions such as IU are expressly ex-

cluded from AOPA's application. *Id.* at 314.[4] Relying on *Blanck*, we held that the legislature's express exclusion of IU from AOPA's scope meant that IU's actions were excluded from judicial review. *Id.* at 315. In other words, we rejected the employee's claim that there was a "common law" right of judicial review of IU's actions.

Similarly, we must reject SOS's contention that there is any "common law" right to review the actions of a school corporation such as FWCS. FWCS is expressly excluded from AOPA's application, and SOS cannot point to any statutory provision that would allow its suit to proceed against FWCS. As *Blanck* and *Hayes* indicate, Indiana courts generally do not recognize a non-statutory, "common law" right to judicial review of governmental decision-making. SOS does note Indiana Code Section 20–26–5–4(1), which permits the governing body of a school corporation "to sue and be sued" in the name of the corporation. This provision clearly does not by itself give rise to a cause of action of any kind against a school corporation or its governing body. It merely provides the mechanism by which otherwise-proper or legally tenable lawsuits may be brought or defended, such as possibly for breach of contract or in tort, under the guidelines of the Indiana Tort Claims Act.

We do believe, however, that it is necessary to address our supreme court's decision in *South Gibson School Board v. Sollman*, 768 N.E.2d 437 (Ind.2002). There, a student challenged his expulsion from school for possessing marijuana. This decision was reviewed by a trial court, this court, and finally our supreme court. Our supreme court did not identify the basis

---

4. In support of this proposition, we cited Indiana Code Section 4–21.5–2–5. This was a scrivener's error, as the correct citation

should have been Indiana Code Section 4–21.5–2–4(a)(3).

upon which the expulsion decision was subject to judicial review. It simply stated, "A school board is an administrative body," and cited a provision of the Indiana Code that was later repealed in 2005. *Sollman,* 768 N.E.2d at 441 (citing I.C. § 20–4–1–3(5) (2002)).[5] It then noted, "as with any administrative body, judicial review of its decisions is narrow. An agency decision will not be overturned unless it is purely arbitrary or an error of law has been made." *Id.* The court also cited a provision of AOPA, Indiana Code Section 4–21.5–5–14(d), in stating the applicable standard of review. *Id.*

We do not read *Sollman* as providing a right to quasi-AOPA judicial review of any decision that a school corporation might make. The right to judicial review of an expulsion decision was unchallenged in that case, whereas here the right to judicial review is squarely before us. Additionally, an expulsion decision impacts a student's constitutionally-protected property interest in a free public education. *See B.S.,* 255 F.Supp.2d at 898. By contrast, as we have already held, SOS has not identified any constitutionally-protected right or interest upon which FWCS infringed when it decided to close Elmhurst. As such, we decline to create a "common law" right to challenge that decision.

### Conclusion

SOS has failed to state a claim that it is entitled to relief for either a violation of the Indiana Constitution by FWCS or under a theory of a "common law" right to judicial review of FWCS's decision to close Elmhurst. We affirm the trial court's granting of FWCS's motion to dismiss.

Affirmed.

DARDEN, J., concurs.

RILEY, J., concurs in result with separate opinion.

RILEY, Judge, concurring in result with separate opinion.

Although I agree with the majority's decision to affirm the trial court's motion to dismiss, I respectfully disagree with the majority's analysis. Whereas the majority embarks on a lengthy constitutional evaluation, I would declare SOS's appeal to be moot. Regardless of the outcome, it is clear that no effective relief can be rendered to the parties. *See Indiana High Sch. Athletic Ass'n, Inc. v. Durham,* 748 N.E.2d 404, 410 (Ind.Ct.App.2001). Elmhurst has closed its doors, its former students and teachers have transferred to other schools, and most of the equipment has been redeployed elsewhere. Moreover, FWCS asserts that due to its collective bargaining agreement, teachers could bid for a position at a re-opened Elmhurst, and as result, the facility, if forced to re-open, would probably be completely different.

In its opinion, the majority develops a constitutional analysis of the Education Clause and the Equal Privileges and Immunities Clause based on a very limited fact-situation. The record clearly reflects that the majority bases its evaluation on the assertions listed in SOS's complaint; no discovery has been conducted, the summary judgment stage has not even been reached. While I do not dismiss the potential public interest involved here, I would prefer to embark on a constitutional analysis after more facts are known and

---

**5.** Indiana Code Section 20–4–1–3(5) stated, " 'Administrative unit' shall mean a school corporation comprising all the area under a single system of local administration and under the control of a local board of education, board of school trustees, or board of school commissioners."

the precedent created by the case would be more valuable. *See Juskulski v. State,* 206 Ind. 503, 190 N.E. 423, 426 (1934) (A precedent must be considered in light of the circumstances of the cause to which it was addressed).