Robinson, Treasurer, v. Schenck.

No. 12,277.

## ROBINSON, TREASURER, v. SCHENCK.

CONSTITUTIONAL LAW.—*Schools.—Taxation.—Statute.*—The statute empowering the school trustees of cities to levy a tax for tuition purposes is constitutional.

SAME.—*Local Taxation.— Uniformity of Statutes.—General Laws.—Delegation of Power.*—It is competent for the Legislature to delegate the power of assessing taxes for local school purposes to the inhabitants of the various localities, but the provisions of the law providing for such local taxation must be open to all school corporations of like character, and the statute must be general in its nature and operation.

SAME.— *Legislative Power.*—The provision of the Constitution, art. 8, sec. 1: "Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government, it shall be the duty of the General Assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement, and to provide, by law, for a general and uniform system of common schools, wherein tuition shall be without charge, and equally open to all," does not require the Legislature to levy all school taxes, nor prohibit it from providing, by a general law, for the levying of school taxes by the local school authorities.

SAME.— *General Laws.— Uniform System of Schools.—*A system that secures to all the various subdivisions of the State equal and uniform rights and privileges, leaving only to the local authorities the right, under the law, to govern the local school affairs, is a general and uniform system, and a law providing such a system is a general law within the meaning of the Constitution.

SAME.—*Right of Courts to Pass on Constitutionality of Statutes.*—The power of the courts to declare a statute unconstitutional is a high one, is very cautiously exercised, and is never exercised in doubtful cases.

SAME.—*Stare Decisis.*—On constitutional questions the rule of *stare decisis* does not possess the same force as in ordinary cases.

SAME.—*Cases Overruled.—Greencastle Tp.* v. *Black,* 5 Ind. 557, and cases following it, in so far as they conflict with the present decision, are overruled.

From the Switzerland Circuit Court.

*W. D. Ward, T. Livings* and *F. T. Hord,* Attorney General, for appellant.

*S. Carter* and *C. S. Tandy,* for appellee.

ELLIOTT, J.—The appellee resists the collection of a tax

assessed against his property by the common council of the city of Vevay, and, by his complaint, seeks an injunction restraining the treasurer from collecting it.

The complaint proceeds upon the theory that the statute authorizing common councils of cities to levy a school tax to be applied to the payment of the compensation of teachers employed in the common schools is in conflict with the Constitution, and void. The contention of appellee's counsel is, that taxes for tuition purposes must be levied by the Legislature, and that the authority to levy them can not be delegated to the local school corporations of the State.

An interpretation of the Constitution which frustrates one of its great and fundamental purposes can not be a sound one. The great and controlling duty of the courts when called upon to interpret the Constitution is to give effect to the intention of the people as expressed in the instrument. Cooley Const. Lim. (5th ed.) 68. This intention is not to be sought for nor gathered from isolated or detached parts of the Constitution, but from an examination of all of its provisions. Cooley Const. Lim. (5th ed.) 70. It is true that language is to be taken in its ordinary meaning, and that courts are to take, without addition or subtraction, the language employed by the people; but the sole office of language is to express the intention and purpose of the people, and from the language of the whole instrument the courts must gather and give effect to the purpose expressed. There can be no doubt as to the purpose of our people regarding common schools; both in the Constitution of 1816 and in that of 1851 are written provisions clearly expressing the purpose of the people to build up a great and beneficent system in which tuition shall " be without charge and equally open to all." The prime object sought is the creation of a system that shall be efficient and enduring. The best means adapted to this end are to be chosen, and all things that will tend to defeat this great purpose are to be put aside. We should wander far from our path of duty if we should give a meaning to the language of

the people that would defeat what we know beyond all doubt was their leading purpose. Courts do not bend the Constitution when they give it the effect which the people intended it should have. We know that to hold that there must be for the whole State one law, governing alike populous districts and sparsely inhabited localities, making the same provisions for the one as for the other, would defeat the great purpose of the Constitution. No subtlety of argument nor ingenuity of invention can make it appear otherwise. It is simply and absolutely impracticable for a general law to justly and adequately provide for the necessities of all the governmental subdivisions of the State. It is possible, and only possible, to build up an efficient system by leaving local school matters, under proper general laws, to the people of the different localities. The Legislature have clearly realized this fact, and the law, now challenged, is an expression of their judgment and that of the people, for it has stood unquestioned for more than eighteen years. We do not affirm that this long acquiescence in the law establishes its constitutionality; but we do affirm that it supplies a strong reason in support of our proposition that the only way in which a great and efficient common school system can be successfully maintained is to entrust to the people of the different localities, by general laws, the government of local school affairs. We know this as part of the history of one of the most important institutions of our State, for we can not be ignorant of the fact that the schools suffered severely from a different system, and have greatly prospered under the present. With the plainly declared purpose of the people before us, and with the knowledge that the system which has prevailed for eighteen years has carried our schools to a high state of prosperity and usefulness, we should do a great wrong if, without the strongest reasons, we should overwhelm that system and compel the adoption of another which would shatter into inefficiency the whole common school system. If, however, the expressed intention of the people as written in the Constitu-

tion required this of us, we should not hesitate, painful as it might be, to give effect to that intention ; but we are well satisfied that the instrument expresses no such intention.

The principal purpose of the constitutional provisions respecting common schools is so plain and prominent that it can not be mistaken, and there is nothing in the language employed, when justly interpreted, that requires the courts to decide anything hostile to that great purpose, but, if there were detached or isolated clauses that opposed the principal purpose, it would be our duty, under long settled rules, to make them yield to the plain intention of the framers of the Constitution. The closest analysis will fail to discover a word that clouds or obscures the controlling purpose of the instrument. The provision reads thus: "Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government, it shall be the duty of the General Assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement, and to provide, by law, for a general and uniform system of common schools, wherein tuition shall be without charge and equally open to all." The provision that the Legislature shall "provide, by law, for a general and uniform system of common schools" does not mean that the Legislature must directly, and by a statute, levy all taxes for each locality, nor that they shall prescribe rules for every school district in the State. The reasonable interpretation of this language is, that the Legislature shall, by a general law, provide for conducting schools and securing revenues from taxation for their support through the instrumentalities of government. These instrumentalities are such political subdivisions as townships, towns and cities, and they are instrumentalities to which local governmental powers may be delegated. There is nothing in the language used that forbids the Legislature from employing these instrumentalities in securing revenues for the support of the common schools, for there is not a word in the entire article of

the Constitution that, directly or indirectly, prohibits the Legislature from making use of these agencies of government in the administration of local school affairs. The nature of the subject and the language employed make it our duty to hold that there is no inhibition upon the power of the Legislature to delegate authority in local affairs to the proper local officers. If there is no denial of the right to delegate powers of local government it exists in the Legislature. Judge Dillon says: " In the absence of special constitutional restriction, the Legislature may confer the taxing power upon municipalities in such measure as it deems expedient; in other words, with such limitations as it sees fit." Again he says: " The legislative branch of the government has the exclusive power of taxation, but may delegate it, as above stated, to municipal corporations." 2 Dillon Munic. Corp. (3d ed.), sections 740, 741. Judge Cooley affirms this doctrine in strong words and cites a very great number of cases in which it was applied to school corporations. Cooley Const. Lim. (5th ed.), 225. We have in our own reports very many cases holding that local powers of government may be delegated, and to repudiate the doctrine would overturn a long line of decisions and unsettle a rule that has been regarded for more than a quarter of a century as the fixed law of the State. Not only would this be the result, but we should violate the fundamental principle that there are no restrictions upon the sovereignty of the Legislature except such as are expressly imposed by the Constitution. *Hedderich* v *State*, 101 Ind. 564, and authorities cited. There is certainly no express restriction in the Constitution upon the power of the Legislature to delegate authority in local school matters to the local officers, and we have neither the right nor the power to interpolate such a restriction in any case, and least of all, where it would operate to defeat one of the great purposes of the Constitution. The distribution of local powers to local authorities is one of the fundamental principles of our government, and it is a principle that

has received the warmest praise from our own jurists and from other great thinkers, so that, in distributing local powers, the Legislature acts in strict conformity to the fundamental principles of our system of government. 2 Kent Com. (12th ed.) 275; 1 Dillon Munic. Corp. (3d ed.), section 11, n. 1. This doctrine has been recognized by this court in its broadest extent. *Justice* v. *City of Logansport,* 101 Ind. 326; *City of Aurora* v. *West,* 9 Ind. 74. It can not be doubted that the Legislature may delegate to local officers the power to make rules for the government of local schools and levy taxes for their support, and, if this be true, it necessarily results that it is a valid exercise of power to enact a statute for that purpose. If a valid statute is enacted committing to the local officers the power to govern schools and raise revenues for their maintenance, the Legislature does provide for a system of common schools " by law," and this is what the Constitution requires. Public corporations are instrumentalities of government through which the Legislature may act, and the acts of these agencies of government in obedience to the statute are the acts of the State. *Justice* v. *City of Logansport, supra,* and authorities cited. When, therefore, the Legislature makes proper provision for the management of school affairs by local officers, they do " provide by law " for a system of common schools.

We have ascertained and decided that when the Legislature makes provision for the government and support of the common schools by providing suitable machinery and committing the details of its operation to local officers, they do " provide by law " for a system of schools, and all that remains is to ascertain and determine whether the system provided is a " general and uniform " one.

A system which grants to all the various subdivisions of the State equal and uniform rights and privileges, leaving only to the local authorities the right to govern the local affairs, is a general and uniform system. The system itself is general and uniform, although the local officers of different localities.

may not administer the details of the system upon the same plan. The fact that there is a difference in the methods of local government does not prove that the system is not a general and uniform one. It is impossible to logically maintain that a system which confers upon all localities alike the power of governing and maintaining schools is not a general and uniform system. Where there is no discrimination made in favor of one subdivision or against others, there is neither want of uniformity nor is the system any other than a general one. Where the right of local government of schools is conferred upon all the school subdivisions upon the same terms, there is nothing special in the statute, nor is there any break in the line of uniformity. The right that the statute grants is made free to all; its privileges are denied to none, and its benefits are open to all localities. It is difficult, if not impossible, to perceive the shadow of a reason for characterizing the system as wanting in uniformity or generality. If the system adopted is uniform and general, then the requirement of the Constitution is fully complied with, and all is done that it is incumbent upon the Legislature to do. Their work was accomplished, and well accomplished, when they "provided, by law, for a general and uniform system of common schools, wherein tuition shall be without charge, and equally open to all." It would be absolutely impossible for the Legislature to do more than provide by law for a general and uniform system of common schools, for they could not prescribe the details for the government of each school district in the State; they could not devise a scheme that would meet the wants and necessities of each district, for this would require them to determine the size of the school-houses, the character of the appliances and furniture, the quantity of fuel that should be consumed, the number of teachers that should be employed, and, indeed, to make provision for the purchase of the smallest things needed for use in the schools, down to the chalk used in the blackboard exercises. The people never meant that the Legislature should undertake to do such an impracticable

thing; all they meant was that the system should be general and uniform in the sense that its privileges and benefits should be extended upon the same terms and conditions to all the school districts of the State, and their meaning is well expressed in their Constitution. When the Legislature, by a general law, left the local school government, upon the same terms and conditions, to all the school districts of the State of like character and condition, they did provide by law for a general and uniform system, and so have not disobeyed the command of the people. Our conclusion is fortified by most ample and satisfactory authority. In speaking of a provision of the Constitution of a similar import to the one under immediate discussion, it was said : " This does not mean that the · rate of assessment shall be uniform and equal for all purposes throughout the State, *City of Richmond* v. *Scott*, 48 Ind. 568 ; but it clearly does require a uniform and equal rate throughout the locality in which the particular tax is levied ; if for State purposes, then in all parts of the State alike ; if for county purposes, in the entire county ; and so in township, town or city, for the local purposes of each." *Loftin* v. *Citizens Nat'l Bank*, 85 Ind. 341.

In the *City of Richmond* v. *Scott, supra,* this was the language of the court: " The constitution, article 10, section 1, provides, that ' the General Assembly shall provide by law for a uniform and equal rate of assessment and taxation ; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal,' etc. Without deciding whether this provision of the constitution, if it applied to municipal taxation, would be violated by the law in question, we are of opinion that the provision can have no reference to municipal taxation. There can not, in the nature of things, be a uniform rate of taxation for municipal purposes. Taxes for corporate purposes can not be equal. The wants and necessities of towns and cities can not be equal. Some require a higher and some a lower rate of tax-

ation. * * * We are of opinion therefore, that the law is not unconstitutional."

More directly applicable to the case under examination is the reasoning in *Kent* v. *Town of Kentland*, 62 Ind. 291, where it was said : " The main question presented—indeed the only one discussed in the appellant's brief—is the constitutionality of the law under which the tax is sought to be collected. The constitution requires, that ' the General Assembly shall provide by law for a uniform and equal rate of assessment and taxation.' Art. 10, sec. 1. It is contended by the appellant, that the law in question does not provide a ' uniform and equal rate of assessment and taxation.' The law under which the tax is assessed, cited above, provides, that ' persons residing outside of any such city or town and electing to be transferred to such town or city for educational purposes, or who shall send their children to the school taught in any such building, shall, with their property, be liable to such tax as if they resided in such city or town, on all property owned by said person in the township where such city or town is located.' The 16th section of the common school act provides, that, when persons can be better accommodated at the school of an adjoining township, incorporated town or city, they may, upon request, be transferred for educational purposes to such adjoining school. Section 17 provides, that each person so transferred may be taxed for the benefit of the school they so enjoy, points out the method by which he may be so taxed, and declares that the payment of such tax shall ' release his property from special school tax, in the township in which he resides.' 1 R. S. 1876, p. 785. The later law, above quoted, under which the tax in question was levied, provides, that those who send their children to such adjoining school shall be so taxed, as well as those who are transferred for educational purposes. We can see nothing unconstitutional in any of these acts. They are ' uniform and equal ' in the rate of assessment and taxation, operate throughout the State, and upon all persons in the same circumstances,

alike. Of course, the facts upon which these laws act are not equal and uniform, but continually vary; and a municipal law can no more act without facts, than the law of gravitation can act without matter. The laws, by which counties and townships levy and collect taxes for their own use, are uniform and equal, yet the rates of assessment and taxation in one county or township, as compared with another county or township, are not uniform and equal, and may vary from year to year. Those changes, in fact, do not affect the uniformity and equality of the law." In *City of South Bend* v. *University of Notre Dame*, 69 Ind. 344, the validity of a statute authorizing a city to levy a school tax was unhesitatingly sustained, and no mental vision, however keen, can discern any difference between that case and the present, yet it only expresses the principle decided in all our cases except the very few that follow *Greencastle Tp.* v. *Black,* 5 Ind. 557. We have cases directly upon the constitutional provision under immediate mention which it is impossible to distinguish in principle from the present. We refer to those cases which hold that local officers may levy taxes for building and equipping school-houses. The result of these cases is thus stated in *Root* v. *Erdelmeyer*, 37 Ind. 225, where WORDEN, C. J., speaking for the court, said: "Thus each civil township in the State, as well as each incorporated city and town, is made an instrumentality by means of which the educational purposes of the State are carried out. But when taxes are assessed by means of these instrumentalities, for building school-houses, they are assessed for school or educational purposes, and not for municipal purposes." This is a full declaration of the whole principle that rules here, and it is logically impossible to doubt its soundness. There are behind that case many decisions affirming the principle there given expression. *Adamson* v. *Auditor, etc.,* 9 Ind. 174; *Rose* v. *Bath Tp.,* 10 Ind. 18; *City of Lafayette* v. *Jenners,* 10 Ind. 70; *Conwell* v. *O'Brien,* 11 Ind. 419; *Covington, etc., Co.* v. *Auditor, etc.,* 14 Ind. 331; *Nill* v. *Jenkinson,* 15 Ind. 425.

Robinson, Treasurer, *v.* Schenck.

If it be true that the local authorities may be invested with authority to levy taxes to build school-houses, then it must also be true that they may be invested with authority to levy taxes to employ teachers, for it is not possible to make any distinction between the right to employ persons to impart instruction to the pupils and the right to provide places where the instruction shall be imparted. If the power to levy a tax to provide places exists, so, also, must the power to employ persons to make use of the places provided. No reason can be imagined why it is not a violation of the Constitution for the Legislature to delegate to the local authorities power to levy taxes to build and equip school-houses, and yet is a violation to delegate the power to levy taxes to pay the teachers who are to make use of the houses. There is no just ground for severing the provision of the Constitution and asserting that a statute which authorizes local officers to levy a tax to build and equip school-houses is valid, and one authorizing the local officers to levy a tax to pay teachers is void. The truth is that in neither case is the statute in conflict with the Constitution; but if in one case, so in both. There is not the remotest implication in the Constitution authorizing the conclusion that there is a difference between the right to levy taxes for the purpose of erecting houses for the accommodation of the pupils, and the right to levy taxes to pay teachers for instructing them, and the court has no power to create such an implication. The act of teaching implies a place to teach as well as a teacher. Both the teaching and the place where instruction is imparted are embraced within the language of our Constitution, and the two things are so closely blended that they can not be separated. If the teacher of a private school were to send to the father of one of his pupils an account for tuition, and afterwards a bill for use of the place where the school was conducted, the position of the teacher would, in principle, be precisely the same as that occupied by those who affirm that the power to levy a tax to

erect school-houses may be delegated, but the power to levy a tax to pay teachers can not be.

The Constitution declares in very emphatic terms the duty of the Legislature respecting common schools, and the failure of that body to use all suitable means to build up and maintain the system would unquestionably be a grave breach of duty; but the Constitution does not deny the right to the Legislature to select the means of building up and encouraging schools. The provision of the Constitution is that "it shall be the duty of the General Assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement, and to provide, by law, for a general and uniform system of common schools." This provision imperatively enjoins the general duty upon the Legislature, but leaves to them much discretion as to the selection of means for the efficient performance of that duty, and if the local agencies of government are employed to assist in building up the school system, there is no evasion of duty by the Legislature. The Legislature may, in their discretion, support all the schools of the State by means of a general levy directly made by a legislative act, or they may thus provide for part of the expense of maintaining the schools, or they may delegate to local officers the power to levy such taxes as in their judgment may be needed to supply the wants of the local schools and make them useful and effective. The duty rests on the Legislature to adopt the best system that can be framed; but they, and not the courts, are to judge what is the best system. There is this limitation on the legislative power, the system must be "a general and uniform one," and tuition must be free and open to all; but the extent of this limitation is this, and nothing more: The Legislature can not make an unequal distribution of money derived from a general levy, make an unequal general levy, or grant to some school corporations benefits or rights withheld from others. This is the general and uniform system contemplated by the Constitution.

The power to declare a statute void on the ground that it is in conflict with the Constitution, is peculiar to the American courts, and the doctrine established by our cases is not found in other systems of jurisprudence. The early cases upon this subject show that the courts at first asserted this doctrine with much hesitation, and there are still some writers who deny the existence of the power, but it is now firmly fixed in our law. *Commonwealth* v. *Caton,* 4 Call (Va.) 5; *Turner* v. *Turner,* 4 Call, 234; *Kamper* v. *Hawkins,* 1 Va. Cas. 20; *United States* v. *Todd,* 13 How. 52 n.; *Marbury* v. *Madison,* 1 Cranch, 137; 1 Kent Com. 453. The power is one of the highest possessed by any judicial tribunal in the world, and is, as all the authorities agree, to be exercised with the utmost care and only in the clearest cases. If there is doubt in the mind of the court as to the validity of the statute, it must be resolved in favor of the Legislature. It devolves upon the party who assails a statute on the ground that it violates the Constitution to show a clear violation and to point out the provision violated; failing in this, his attack is unavailing. The courts are reluctant to declare statutes unconstitutional because of the high power they assert in doing so, and because of the respect which is due to the judgment of one of the co-ordinate departments of government. In exercising this power the courts necessarily overthrow the judgment of the Legislature that enacted the statute and of the chief executive who approved it, and it is just that they should assert the power only in very clear cases. This consideration leads to the conclusion that courts should overrule their own decisions rather than assume a power which places them above the executive and legislative departments of the government, in cases where investigation has convinced them that their former decisions were erroneous. Much less evil will result from a departure from former decisions than from an assumption of so great a power as that of declaring statutes unconstitutional. The rule of *stare decisis* has not been held not to apply with its usual force and vigor to decisions upon

constitutional questions.   In a case not unlike the present it was decided that "The rule of *stare decisis* applies when a decision has been recognized as a law of property, and conflicting demands have been adjusted, and contracts made with reference to and on faith of it; but not to questions involving the construction and interpretation of the. organic law, the structure of the government, and the limitations upon the legislative and executive power." *Willis* v. *Owen,* 43 Texas, 41.   Another court announces a similar conclusion and assigns this, among other reasons, for its conclusion: "That upon a constitutional question as to which we have no doubt, we can not follow a former decision against our present conviction, for the reason that to do so would violate our oath to support the constitution." *Kneeland* v. *City of Milwaukee,* 15 Wis. 454, p. 692.

Here we are not embarrassed by the consideration that property rights have been acquired on the faith of the decision in *Greencastle Township* v. *Black, supra,* for it is now more than eighteen years since the statute under examination was enacted, and for all these years it has stood as the unquestioned law of the land.   Much greater disturbance would be produced in returning to the decision in that case than in acquiescing in the decision of the executive and legislative departments of the government so long approved by our people.   But more than this, we have had since 1857 a decision adverse in principle to the doctrine of *Greencastle Township* v. *Black, supra,* and many other decisions of more modern date clearly hostile to it.   In truth, an assertion now of the doctrine of that case would unsettle the law upon the subject of drainage, of roads, of courts, and upon a great many other subjects, for, in deciding constitutional questions involving the meaning of provisions of a similar import to the phrase "a general and uniform system," the court has taken a very different view from that asserted in the case of *Greencastle Township* v. *Black, supra.*   We can not cite all of the cases

bearing upon this general subject, but content ourselves with adding to those already cited the following: *Combs* v. *State*, 26 Ind. 98, see p. 99; *Clem* v. *State*, 33 Ind. 418, p. 421; *Gentile* v. *State*, 29 Ind. 409; *State* v. *Tucker*, 46 Ind. 355; *Cory* v. *Carter*, 48 Ind. 327 (17 Am. R. 738); *Kelly* v. *State*, *ex rel.*, 92 Ind. 236; *Wishmier* v. *State*, 97 Ind. 160, auth. p. 162; *State, ex rel.*, v. *Gray*, 93 Ind. 303; *Mount* v. *State*, *ex rel.*, 90 Ind. 29 (46 Am. R. 192); *Gardner* v. *Haney*, 86 Ind. 17; *Sauer* v. *Twining*, 81 Ind. 366; *State, ex rel.*, v. *Board, etc.*, 101 Ind. 96.

It will be clear to any one who studies our cases that the decision in *Greencastle Township* v. *Black*, *supra*, has long since been overruled in so far as it denies the power of the Legislature to empower school corporations to levy what is called a tuition tax, and all that it is incumbent upon us to do here is to announce as the result of these decisions, that it is overruled in so far as it asserts a doctrine inconsistent with them. If, however, the decision was not in principle overruled by the cases to which we have referred, we should nevertheless feel it our duty to overrule it now, because we are convinced that in the respect indicated it was not well decided, and for the reason that the statute now in force has been so long and uniformly acquiesced in that we ought not to return to the doctrine of that case unless quite well satisfied of its soundness; nor, as we have shown, are we embarrassed by any of the considerations which generally make courts reluctant to depart from former decisions. There is another point in *Greencastle Township* v. *Black, supra,* which was the controlling one, and upon which the conclusion might perhaps have been rested, and it was really not necessary to the decision of the case before the court to decide the question which is here the dominating one. The point to which we refer was that decided in *Maize* v. *State*, 4 Ind. 342, namely: "The law-making power being vested by the Constitution of 1851 in the General Assembly, the exercise, by any other

body, of the power to make, sanction, suspend, or give effect to, the laws is necessarily excluded."

Judgment reversed, with instructions to sustain the demurrer to the complaint.

Filed June 18, 1885.