ATTORNEY FOR APPELLANT
Ian W. Thompson
Mooresville, Indiana

ATTORNEYS FOR APPELLEE
V. Samuel Laurin III
Bryan H. Babb
Joel T. Nagle
Bose McKinney & Evans LLP
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Mar 24 2015, 9:57 am
CLERK
of the supreme court,
court of appeals and
tax court

No. 49S02-1410-PL-643

LORA HOAGLAND, ON BEHALF OF HERSELF
AND ALL OTHERS SIMILARLY SITUATED,

*Appellant (Plaintiff below),*

v.

FRANKLIN TOWNSHIP COMMUNITY
SCHOOL CORPORATION,

*Appellee (Defendant below).*

Appeal from the Marion County Circuit Court, No. 49D02-1111-PL-42082
The Honorable Theodore M. Sosin, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1301-PL-44

**March 24, 2015**

**David, Justice.**

After a budget deficit, Franklin Township Community School Corporation decided to discontinue transportation services to and from school for the majority of its public school students. A class action suit was brought by the parents of students who attend public schools in Franklin School Corporation. The plaintiffs sought a declaratory judgment that discontinuing transportation

is prohibited under the Indiana Constitution.  The plaintiffs' specific challenge was based upon Article 8, Section 1 of the Indiana Constitution (the Education Clause), which provides:

> Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government; it shall be the duty of the General Assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and to provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all.

IND. CONST. art. 8, § 1.  However, the express terms of the Education Clause grant the duty of developing a system of common schools to the General Assembly.  Therefore, the body of law that establishes our system of common schools is based upon the policy decisions of our legislature.  This Court has neither the ability nor the duty to establish requirements for this system of common schools, aside from determining when an action clearly violates a constitutional mandate.  In the case before us today, we find no constitutional requirement for school corporations to provide transportation to and from school.  Since Franklin School Corporation did not violate a constitutional mandate, we affirm the trial court's grant of summary judgment in favor of Franklin School Corporation.

## Facts and Procedural History

In 2010, Franklin Township Community School Corporation was faced with a large budget deficit.  Due to this shortfall, the School Corporation Board voted to discontinue transportation services for the majority of students[1] attending its public schools.  This decision was implemented

---

[1] As discussed below, the legislature has provided that a small percentage of students who meet certain criteria are required to receive transportation.  See Ind. Code § 20-27-12-4 (2014) (school corporations "shall provide transportation" for certain homeless students); Ind. Code § 20-50-3-5 (2014) (school

during the 2011-2012 school year, at which point a private entity, Central Indiana Educational Service Center (CIESC), began providing transportation services to students for a fee. CIESC charged a non-refundable registration fee of $20.00 per student to apply for transportation, in addition to an annual fee of $475.00 for a single child and $405.00 for each additional child. Parents could choose to use CIESC transportation services and pay the fees, or find alternative transportation for their child(ren). If parents wanted CIESC to provide transportation, they had to enter into a "Parents' Supplemental Transportation Contract," which provided that the parents and the bus driver were entering an agreement pursuant to and in compliance with Indiana statutes.[2]

Lora Hoagland and Donna Chapman, parents of students who attend Franklin Township public schools, brought suit against Franklin School Corporation and CIESC. Hoagland's complaint asserted that Franklin School Corporation violated the Education Clause of Indiana's Constitution when it discontinued transportation services. Hoagland sought an injunction and a declaratory judgment asserting that the School Corporation's discontinuation of bus services is unconstitutional because it denies children an education where tuition is without charge. She also sought monetary damages that were incurred from having to transport her children to and from school. Shortly thereafter, on November 15, 2011, Hoagland filed for class certification in order to bring a class action suit against Franklin School Corporation. In June 2012, class certification was obtained and two classes of plaintiffs were certified: 1) all parents or guardians of students enrolled in Franklin School Corporation public schools who paid the CIESC bussing fees; and 2) all parents and guardians of students enrolled in Franklin School Corporation public schools who did not pay the bussing fees, but whose child(ren) would have ridden the bus to school were it not

corporations "shall provide transportation" for certain students in foster care); and 511 I.A.C. 7-36-8 (2014) ("students with disabilities shall be transported . . .").

[2] Indiana Code Section 20-27-6-3 (2014) provides in pertinent part, "[t]he parents of public school students not provided bus transportation by the school corporation may contract jointly with a school bus driver to provide transportation under a parents' supplemental transportation contract."

for the fees. Hoagland was appointed as the class representative for the non-paying class. Chapman was appointed as the class representative for the paying class.

Shortly after receiving class certification, the Indiana General Assembly amended Indiana Code Section 20-27-5-2, which took effect July 1, 2012. The amendment provided in pertinent part, "no fee may be charged to a parent or student for transportation to and from school. However, a fee may be charged for transportation to and from an athletic, a social, or another school sponsored function." Ind. Code § 20-27-5-2(b) (2014). However, part (a) of that same statutory section was not amended and continued to provide that ". . . a school corporation *may* provide transportation for students to and from school." Ind. Code § 20-27-5-2(a) (emphasis added).

CIESC filed a motion to dismiss for, among other things, the failure of both plaintiffs to state a claim for which relief could be granted. The trial court granted CIESC's motion to dismiss, and the Court of Appeals affirmed the denial on interlocutory appeal. Chapman v. Cent. Indiana Educ. Serv. Ctr. and Franklin Twp. Cmty. Sch. Corp., No. 49A05-1209-PL-478, Slip Op. at *2 (Ind. Ct. App. April 30, 2013).[3] Accordingly, CIESC ceased being a party to the suit.

Franklin School Corporation and Hoagland then filed cross motions for summary judgment. Hoagland asserted several arguments. The primary position Hoagland argued was that the Education Clause requires school corporations to provide transportation for students to and from school. Hoagland also argued that this claim would not be barred by the Indiana Tort Claims Act (ITCA) because that statute is inapplicable. However, if it were determined that the ITCA

---

[3] Chapman had specifically challenged the contract the she had entered into with CIESC to provide transportation for her child to and from school. Chapman, No. 49A05-1209-PL-478, Slip Op. at *1. The Court of Appeals noted that Chapman had paid the fee and received the bus services from CIESC, and the contract between the parties was completed. Id. at *2. The Court of Appeals determined that Chapman failed to allege why the CIESC contract was an adhesion contract, why it was illegal, why it unlawfully limited parents' remedy, and how it was void against public policy. Id. Accordingly, the alleged facts were incapable of supporting a claim for relief. Id.

4

applied, Hoagland argued that the plaintiffs had substantially complied with the notice requirements under the ITCA. Finally, Hoagland argued that under the Education Clause the plaintiffs' have a private right of action to pursue money damages. Franklin School Corporation argued that the Education Clause does not create a duty upon the school corporation to provide transportation services, but even if there were a duty, the Education Clause provides no private right of action to pursue money damages for breaching that duty. In addition, Franklin School Corporation argued that the ITCA would provide immunity against Hoagland's claim because the Act protects the exercise of discretionary functions, and the plaintiffs failed to provide notice as required by the ITCA.

The trial court denied Hoagland's motion for summary judgment and granted summary judgment for Franklin School Corporation. The trial court determined that there was no constitutional duty to provide bussing because state law provides that transportation is an optional service. The trial court also concluded that the Parents' Supplemental Transportation Contract with CIESC did not provide a cause of action or relief in damages. Additionally, the trial court found that the Education Clause did not provide a private right of action for money damages, and the plaintiffs' claims were barred for the failure to provide timely notice under the ITCA.

Hoagland appealed, arguing in opposition to each of the findings reached by the trial court. A unanimous Court of Appeals affirmed in part and reversed and remanded part to the trial court. Hoagland v. Franklin Twp. Cmty. Sch. Corp., 10 N.E.3d 1034 (Ind. Ct. App. 2014). The Court of Appeals affirmed that Hoagland had no private right of action for monetary damages under the Education Clause. Id. at 1040. Contrary to the trial court, the Court of Appeals held that the ITCA, "[b]y its express language," only applies to tort claims, and "Hoagland's claim sounds in Indiana's Education Clause, not tort law . . . ." Id. at 1039. Thus, the ITCA did not bar Hoagland's state constitutional claim. Id. at 1040. Lastly, the Court of Appeals held that Franklin School Corporation acted unconstitutionally when it ceased providing students with transportation to and from school. Id. at 1043-44. The Court of Appeals relied upon the text of the Education Clause, relevant statutes, and Nagy ex. rel. Nagy v. Evansville-Vanderburgh Sch. Corp., 844 N.E.2d 481 (Ind. 2006), to reach the conclusion that transportation to and from school is "part and

5

parcel of a public[-]school education," which a school corporation cannot discontinue without violating the Education Clause. Hoagland, 10 N.E.3d at 1044.

This Court granted Franklin School Corporation's petition to transfer. We summarily affirm the Court of Appeals in its holding that Indiana's Education Clause does not provide an individual with a private right of action for monetary damages. Hoagland, 10 N.E.3d at 1040; See also Ind. Appellate Rule 58(A)(2). We also summarily affirm the Court of Appeals' holding that the ITCA does not govern Hoagland's state constitutional claim. Id. at 1039-40. The remainder of the Court of Appeals' opinion is vacated. See Ind. Appellate Rule 58(A). Therefore, the only issue to be addressed by this Court is whether the Education Clause imposes a duty upon Franklin School Corporation to provide transportation to and from its public schools.

**Standard of Review**

"[Q]uestions arising under the Indiana Constitution are to be resolved by examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our Constitution, and case law interpreting the specific provisions." Nagy, 844 N.E.2d at 484 (citing Ratliff v. Cohn, 693 N.E.2d 530, 534 (Ind. 1998)). The "intent of the framers of the Constitution is paramount in determining the meaning of a provision," and considering the purpose behind the adoption of a provision allows this Court to best ascertain what the provision was designed to prevent. Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996) (internal citations and quotation omitted). This requires "[t]he language of each provision of the Constitution [to] be treated with particular deference, as though every word had been hammered into place." Embry v. O'Bannon, 798 N.E.2d 157, 160 (Ind. 2003) (quoting City Chapel Evangelical Free Inc. v. City of South Bend, 744 N.E.2d 443, 447 (Ind. 2001)). Moreover, "central authority over schools and school affairs being in the General Assembly, its discretion should be respected by local authorities and the courts, unless there is a clear violation of some section of the constitution." Fort Wayne Cmty. Sch. v. State ex. rel. New Haven Public Sch., 159 N.E.2d 708, 709 (Ind. 1959) (string citation omitted).

6

Additionally, an interpretation of Indiana's Constitution is conducted independently by this Court. City of Indianapolis v. Wright, 371 N.E.2d 1298, 1300 (Ind. 1978). However, we may look to other states that have interpreted similar constitutional provisions in their own state as persuasive authority over this Court's interpretation of Indiana's Constitution. Id. (citing Allen v. Van Buren Twshp. of Madison Cnty., 184 N.E.2d 25, 30 (1962)).

**Discussion**

**I.      Article 8, Section 1—the Education Clause**

"It has always been the policy of this state to foster and encourage education . . . ." Fort Wayne Cmty. Sch., 159 N.E.2d at 709. The heart of this policy is derived from the Education Clause of Indiana's Constitution, which provides for a "common school system." IND. CONST. art. 8, § 1. In order to achieve a system of common schools, the Indiana Constitution provides in pertinent part, "it shall be *the duty of the General Assembly* to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and to provide, *by law*, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all." Id. (emphases added).

In accordance with this constitutional mandate, this Court has long recognized that "[t]he General Assembly of this state is under a constitutional imperative duty to provide by law for a general and uniform system of common schools." Ehle v. State, 191 Ind. 502, 507, 133 N.E. 748, 750 (1922). The General Assembly has two express duties under the Education Clause. Bonner ex. rel. Bonner v. Daniels, 907 N.E.2d 516, 520 (Ind. 2009). "The first is the duty to *encourage* moral, intellectual, scientific, and agricultural improvements. The second is the duty to *provide* for a general and uniform system of open common schools without tuition." Id. These duties are similar to those that were provided in Indiana's first Constitution, which imposed upon the General Assembly the duty to "provide, by law, for a general system of education, ascending in a regular gradation, from township schools to a state university, wherein tuition shall be gratis, and equally open to all." Id. at 520; IND. CONST. of 1816, art. 9, § 2. However, we acknowledged that "[a]

7

comparison of the two suggests that the 1851 revision was actually less expansive, referring to only a system of common schools instead of a general system of education through college, and describing tuition as 'without charge' instead of its Latin equivalent, 'gratis.'" Bonner, 907 N.E.2d at 521.

However, neither version of the Education Clause provided for a free public school system. "A free public school system implies a level of educational subsidization that the framers at least did not endorse and at most rejected outright." Nagy, 844 N.E.2d at 485. The framers decided that schools would not be completely subsidized, and instead "a more modest, and perhaps less controversial" approach was taken, which provided for "a uniform statewide system of public schools that would be supported by taxation." Id. at 489. Accordingly, the framers did not intend for every aspect of public education to be free.

As the text of the Education Clause provides, the General Assembly is tasked with establishing the laws that make up a system of common schools. Thus, the legislative branch is left with "considerable discretion in determining what will and what will not come within the meaning of a public education system." Nagy, 844 N.E.2d at 491. Due to this discretion, we have emphasized that the legislature is to "adopt the best [school] system that can be framed; but they, and not the courts, are to judge what is the best system." Id. (quoting Robinson v. Schenck, 102 Ind. 307, 318, 1 N.E. 698, 705 (1885)).

Although the courts do not establish education policy, over a century ago this Court addressed an argument that is substantially similar to the issues presented today. A writ of mandamus was sought to compel a township trustee to use certain funds to provide free transportation for students in a recently consolidated school district. State ex. rel. Beard v. Jackson, 168 Ind. 384, 385, 81 N.E. 62, 63 (1907). The parties argued that "unless free transportation is furnished to and from said school, many of said children will be unable to attend . . . ." Id. at 386, 63. The Court looked to applicable statutes to determine if there was any duty upon the school trustee to provide transportation. The Court explained, "[a] duty arising out of statute must not be merely permissive or discretionary, but the statute must require the act to be done . . . ." Id. at 387,

8

63. The act of 1899, which imposed compulsory school attendance, provided that students who lived a certain distance from school were not bound by the compulsory attendance statute, unless free transportation was provided. Id. at 387, 64. However, the Court explained that the 1899 act was superseded by the 1901 statute, which omitted the section requiring free transportation. Id. The Court emphasized that "[t]he only *reference* to free transportation of school children found in statutes prior to the act of 1907" involved transferring students to a school corporation closer to their residence, unless free transportation were provided. Id. at 387-88, 64. (emphasis added). Yet, "[t]his indefinite allusion in no way indicates by whom or by what means such free transportation may be furnished, and comes far short of a requirement that the same shall be provided." Id. at 388, 64. The Court held that the relevant statutory framework imposed no duty to provide free transportation to students to and from school. Id. at 390, 64.

Also in Jackson, the Court briefly referenced the Education Clause, only to note that an obligation imposed upon one school trustee to provide free transportation would become a legal obligation for all others, which the court dismissed by explaining that one trustee is not compelled to continue providing free transportation just because a predecessor did so. Id. at 388-89, 64. The Court never indicated that anything within the Education Clause would require transportation services to be provided. Rather, "[i]f the furnishing of such free transportation under the law be deemed expedient, the Legislature should enjoin the duty upon the appropriate officers, authorize the levy of adequate taxes to meet the expenses thereof, and prescribe the conditions and limitations under which the same is to be provided." Id. at 389-90, 64. Furthermore, "[t]he requisite legislation cannot be supplied by the court, school officers, or local tribunals, but must emanate from the lawmaking body, and be general and uniform in its application." Id. at 390, 64.

On several occasions, we have addressed various challenges under the Education Clause, and the discretion afforded to the legislature resonates throughout many of these cases. See Meredith v. Pence, 984 N.E.2d 1213, 1222-23 (Ind. 2013) (determining that the General Assembly has enacted "a body of law directed at providing a general and uniform system of public schools. . . . [and] [t]he school voucher program does not replace the public school system, which remains in place and available to all Indiana schoolchildren in accordance with the dictates of the

Education Clause") (citation omitted); Bonner, 907 N.E.2d at 522 (holding that Education Clause "does not impose upon government an affirmative duty to achieve any particular standard of resulting educational quality . . . [rather, that] determination is delegated to the sound legislative discretion of the General Assembly"); and Robinson, 102 Ind. at 307-11, 1 N.E. at 698-701 (determining that there is no constitutional restriction upon legislature to delegate authority, in local school matters, to local officers; due to this, legislature itself does not have to levy school tax, but city common council may do so).

However, this Court did find a violation of the Education Clause in Nagy. In Nagy, a school corporation imposed a $20 student service fee on all students in grades Kindergarten through Twelve. 844 N.E.2d at 482. The fee went into a general fund that covered expenses such as nurses, media specialists, and alternative education. Id. at 483. Every student was charged the fee. Id. A complaint was filed against the school corporation alleging that this fee violated the Indiana Education Clause, among other things. Id. The issue became whether the fee constituted charging tuition. Id. This Court first noted that, unlike other states, the Indiana Constitution does "not . . . provide for a free school system," but only provides that tuition shall be without charge. Id. at 485. However,

> Where the legislature . . . has identified programs, activities, projects, services, or curricula that it either *mandates or permits* school corporations to undertake, the legislature has made a policy decision regarding exactly what qualifies as a part of a uniform system of public education commanded by Article 8, Section 1 and thus what qualifies for funding at public expense.

Id. at 492 (emphasis added). The Court determined that the imposed fee covered expenses that the General Assembly had already determined were "part and parcel of a public school education and by extension qualify for public funding." Id. Ultimately, the fee was found to be unconstitutional because it was equivalent to being charged for attending a public school and obtaining a public education. Id. at 493.

10

In the current case, Hoagland argues that the legislature has *permitted* school corporations to provide transportation, which demonstrates its policy decision that transportation is part and parcel of a uniform system of public schools and should be publically funded. Taking Nagy one step further, Hoagland claims that not only could the school corporation not charge a fee for transportation, but the school corporation may not discontinue providing transportation to and from school. However, Nagy only addresses the limited facts of that case, i.e., whether charging a general student fee was the equivalent to charging tuition. Nagy does not address in any way whether school corporations are required to *provide* transportation. As such, Nagy is not controlling where the specific issue is whether a school corporation can discontinue transportation services to and from school. If anything can be drawn from Nagy, it would be the emphasis put upon the discretion afforded to the legislature in defining education policy. See Nagy, 844 N.E.2d at 491 (reiterating that the General Assembly has "considerable discretion in determining what will and what will not come within the meaning of a public education system.")

In the current case, although we need not address the fee charged by CIESC because it has already been deemed impermissible by the legislature, it seems pertinent to note that the fee charged by CIESC is also distinguishable from the fee charged in Nagy. First, the fee in Nagy went into a general fund that covered costs for several *mandatory*, in addition to discretionary, services the school corporation was required to provide. See Nagy, 844 N.E.2d at 492; See also 511 I.A.C. 4-1.5-5 (2012) ("[s]chool corporations *shall* provide student assistance services . . ."); 511 I.A.C. 4-1.5-6 (2012) ("[s]chool corporations *shall* provide health services . . ."); and 511 I.A.C. 6.1-5-6 (2013) ("[a]ll schools *shall* have a media program . . .") (emphases added). Second, the fee itself in Nagy was mandatory and was "imposed generally on all students, whether the student avails herself of a service or participates in a program or activity or not," which makes the fee equivalent to tuition. 844 N.E.2d at 493. Here, the fee solely covered transportation, which is a permissive service only. Additionally, the fee was only charged to those students who chose to benefit from the optional transportation services.

The history and text of the Education Clause, along with precedent interpreting it, compels this Court to remain cognizant that a system of common schools is left to the "sound legislative

discretion of the General Assembly, and where . . . the exercise of that discretion does not run afoul of the Constitution, it is not for the judiciary to evaluate the prudence of the chosen policy." Meredith, 984 N.E.2d at 1222. As this Court has done many times, we will address whether the challenged actions in this case run afoul of the Education Clause.

## II. Indiana Constitutional Requirements for Public School Transportation

The specific issue before this Court is whether the Education Clause mandates Franklin School Corporation to provide transportation to and from its public schools. The General Assembly has enacted legislation regarding the transportation of students to and from school. The relevant statutory language provides:

(a) The governing body of a school corporation *may* provide transportation for students to and from school.

(b) If the governing body of a school corporation: (1) provides transportation; or (2) contracts with an education service center . . . to provide transportation; *no fee may be charged* to a parent or student for transportation to and from school. However, a fee may be charged for transportation to and from an athletic, a social, or another school sponsored function.

Ind. Code § 20-27-5-2 (emphases added). As mentioned above, it was not until this case was pending that the General Assembly amended this statutory section to expressly provide that if transportation is provided, no fee may be charged. Thus, that amendment did away with any question of whether the fees charged by CIESC were permissible; it is clear based upon the plain language of the statute that the CIESC transportation fee is prohibited.[4]

---

[4] Franklin Township School Board complied with this statutory amendment by approving a debt-refinancing plan and resumed bussing of its students for the 2012-13 school year.

As to the separate issue of who is responsible for providing transportation, the legislative language expressly states that school corporations "may" provide transportation, demonstrating that this is a permissive action, and the school corporation may choose to *not* provide transportation. Compare State, Indiana Civil Rights Comm'n v. Indianapolis Newspapers, Inc., 716 N.E.2d 943, 947 (Ind. 1999) (stating that "[w]hen the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning") (citation omitted); with Bivins v. State, 642 N.E.2d 928, 946 (Ind. 1994) (determining that "[t]he statutory language utilized is *permissive, not compulsory,* in stating that the jury '*may* recommend' the death penalty upon completion of the evaluation of aggravating and mitigating circumstances") (emphases added).

Furthermore, no other statutory sections within Title 20 suggest a legislative intent that school corporations are required to provide all students with transportation to and from school. Specific categories of students are required by statute to be provided transportation. However, for the majority of the student population, other provisions throughout Title 20 express the permissive nature of providing transportation. Under Indiana Code Section 20-26-5-4(10) (2014), the governing body of a school corporation has the power to determine when transporting children to and from school is necessary. Additionally, "[t]he parents of public school students *not provided bus transportation by the school corporation* may contract jointly with a school bus driver to provide transportation under a parents' supplemental transportation contract." Ind. Code § 20-27-6-3(a) (emphasis added). Thus, the legislature has provided alternative means for students to be transported to and from school.

Since it cannot be disputed that the statutory language allows a school corporation to discontinue transportation services, next we evaluate whether this violates the Education Clause. Hoagland asserts that since students are required to attend school, transportation to school is an integral part of public education. This Court does not dispute that being present at school is necessary to avail oneself of the benefits of the education offered there. However, that does not necessarily lead to the conclusion that the school corporation alone must provide transportation under the Education Clause.

This Court determined over a century ago in Jackson that school corporations were not compelled to provide transportation. 168 Ind. at 390, 81 N.E. at 64. Although Jackson primarily addressed whether transportation was required by statute, we find no basis from deviating from the rationale provided in Jackson as we now determine whether the Education Clause itself compels school corporations to provide transportation. Jackson plainly states that if free transportation by the school corporation was deemed mandatory, the legislature must establish that requirement by law. Id. at 389-90, 64. The Court reached that conclusion despite acknowledgment of the Education Clause. We therefore reiterate that legislation governing student transportation to and from our public schools "cannot be supplied by the court, school officers, or local tribunals, but must emanate from the lawmaking body . . . ." Id. at 390, 64. Here, the legislature has crafted laws that allow school corporations to choose whether or not to provide transportation. As we concluded in Jackson, nothing within these laws expressly requires school corporations to provide transportation. Id. at 389-90, 64.

Furthermore, when interpreting a provision of the Indiana Constitution, this Court on occasion will look to another states' interpretation of its own state constitution, if it contains a similar provision to Indiana's Constitution. Allen, 184 N.E.2d at 30. The Supreme Court of North Dakota has addressed the issue of student transportation in light of North Dakota's constitutional requirements. In Kadrmas v. Dickinson Public Schools, a school corporation was charging fees for transportation. 402 N.W.2d 897, 898 (N.D. 1987). Under Article VIII, Section 2 of the North Dakota Constitution, "[t]he legislative assembly shall provide for a uniform system of free public schools throughout the state . . . ." The Court recognized that it had previously held that textbook fees could not be charged because textbooks were part of the education system. Kadrmas, 402 N.W.2d at 899 (citing Cardiff v. Bismarck Pub. Sch. Dist., 263 N.W.2d 105, 113 (N.D. 1978)). However, that holding was not determinative of whether transportation was also part of the education system. The court broadly addressed transportation to and from school by explaining:

> [O]ur laws on this subject demonstrate a long-standing practice of state and school district involvement in student transportation. However, our laws also clearly demonstrate that the Legislature has never required that the state or school districts assume the entire

> *responsibility or cost* of transporting students. Although state and school district involvement in providing student transportation has been significant, *the obligation of transporting students to and from school has been shared by the parents or other caretakers* of the children, and the people of this state have acquiesced in sharing that responsibility from the first days of statehood to the present time.

Kadrmas, 402 N.W.2d at 900 (footnote omitted) (emphases added). The Court determined that the shared responsibility of transportation strongly indicated that free transportation under the North Dakota Education Clause was not required. Id.

Before reaching its final conclusion, the Court acknowledged that "[n]o one could seriously dispute the logic of the assertion that a child must reach the schoolhouse door as a prerequisite to receiving the educational opportunity offered therein." Id. at 901. Yet, that alone does not compel the conclusion that transportation is required under the constitution. Id. The Court pointed out that "[o]ther important prerequisites to participating in the educational opportunity offered by the public school system might include good nutrition and proper immunizations." Id. at 901-02. But ultimately, those services are not mandated by North Dakota's Education Clause, even though a school corporation may choose to provide it. Id. The Court held that charging fees for transportation services did not violate its constitution. Id. at 902.

Significantly, Kadrmas held that free transportation was not mandated by the North Dakota Constitution, even though the Education Clause provided for "free public schools," unlike Indiana's Education Clause, which is more limited in only providing that "tuition shall be without charge." IND. CONST. art. 8, § 1; See also Nagy, 844 N.E.2d at 489-90 (explaining the significant distinction between *free* public schools and tuition being without charge). The conclusion in Kadrmas that transportation is not required under North Dakota's Constitution is premised upon the understanding that transportation has always been a shared duty between the schools and parents or guardians of the students. We likewise acknowledge that schools systems, parents, and other guardians have traditionally shared the responsibility of transporting children to and from school. But that alone does not lead to the conclusion that school corporations have a duty under Indiana's Constitution to provide transportation.

15

We also find <u>Kadrmas</u> persuasive by recognizing that many of the programs, activities, projects, services, or curricula a school corporation has the option of providing may facilitate a more comprehensive education system. For example, initiatives that attempt to address childhood obesity have presented studies demonstrating that "students of a normal weight have higher scholastic achievement [and] less absenteeism . . . than their obese counterparts." Lauren Kaplin, *A National Strategy to Combat the Childhood Obesity Epidemic*, 15 U.C. DAVIS J. JUV. L. & POL'Y 347, 352 (2011) (citation omitted). Additionally, schools "provide the ideal setting to institutionalize programs" addressing these problems. <u>Id.</u> at 354. Although many would likely agree that addressing childhood obesity at school is good policy that does not mean that Indiana's Constitution mandates its implementation, even if some logical connection can be made between addressing obesity and providing a system of common schools equally open to all.

Moreover, this Court addressed the Education Clause in <u>Bonner</u> and demonstrated the adherence we must give to the plain language of the constitution. 907 N.E.2d at 520-22. In <u>Bonner</u>, plaintiffs sought a declaratory judgment to establish that the Education Clause imposes a duty upon the state to establish a standard for quality education in public schools. <u>Id.</u> at 518. The Court noted that this claim was not brought under any specific provision of the Education Clause, but under the entire Education Clause in general. <u>Id.</u> at 520. After looking to the text of the constitution, the Court concluded, "its language speaks only of a general duty to provide for a system of common schools and does not require the attainment of any standard of resulting educational quality." <u>Id.</u> at 521. The actual phrases "general and uniform," "tuition . . . without charge," and "equally open to all" set out no apparent requirement that a specific educational achievement standard must be met. <u>Id.</u> Simply stated, "[t]he Clause says nothing whatsoever about educational quality." <u>Id.</u> The Court held, "the Education Clause of the Indiana Constitution does not impose upon government an affirmative duty to achieve any particular standard of resulting educational quality. This determination is delegated to the sound legislative discretion of the General Assembly." <u>Id.</u> at 522.

There is no dispute that providing a quality education is exceedingly important to the citizens of Indiana, and it is equally important to our school corporations, the legislature, and this

16

Court. However, as <u>Bonner</u> holds, what may be presented as good policy is not necessarily a constitutional requirement. The legislature makes "policy decision[s] regarding exactly what qualifies as a part of a uniform system of public education," and that will not be disrupted "unless there is a clear violation" of the constitution. <u>Nagy</u>, 844 N.E.2d at 492; <u>Fort Wayne Cmty. Sch.</u>, 159 N.E.2d at 709. In the case before us today, no specific provision of the Education Clause is alleged to be specifically violated by a school corporation not providing free transportation. Rather, the primary basis of Hoagland's argument relies upon the proposition that transportation is "part and parcel of a public[-]school education," implying that it cannot be done away with without violating the Education Clause. (Resp. to Pet. Tr. at 9 (quoting <u>Nagy</u>, 844 N.E.2d at 492)). As in <u>Bonner</u>, the express provisions within the constitution say "nothing whatsoever about [transportation]." <u>Bonner</u>, 907 N.E.2d at 521.

Even if we presume that the argument is based upon schools being equally open to all, the decision to cease transportation services does not deny open access to public education. It will inevitably require some families to make alternative accommodations, but it will not close the schoolhouse doors. Furthermore, students that have more articulable needs (homeless students, students with physical disabilities, etc.), will still receive transportation, likely in recognition of the fact that it is more difficult to provide transportation accommodations for those students.[5]

In summary, the Indiana Education Clause only requires that there be a "general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all." We cannot read into that provision an intention that school corporations are required to transport all students to and from school. Rather, the applicable legislation will govern, and here, "[t]he policy of such legislation is exclusively for the General Assembly." <u>Ehle</u>, 191 Ind. at 508, 133 N.E.2d at 750. The General Assembly's "determination of public policy will be afforded wide

---

[5] This is not to suggest that transporting these students would be constitutionally required. Rather, this statement is only a reflection of what current legislation provides.

discretion," and the "wisdom or desirability" of particular legislation "is not a matter for the judiciary to determine." Walton v. State, 398 N.E.2d 667, 670-71 (Ind. 1980) (internal citations omitted).

## Conclusion

We summarily affirm the Court of Appeals in holding that the Indiana Tort Claims Act was inapplicable to Hoagland's constitutional claim. We also summarily affirm the Court of Appeals in holding that the Education Clause does not provide a private right of action to pursue monetary damages. We now hold that Article 8, Section 1 of Indiana's Constitution does not mandate school corporations to provide transportation to and from school. Accordingly, we affirm the trial court's grant of summary judgment in favor of Franklin School Corporation.

Rush, C.J., Dickson and Massa, J.J., concur.

Rucker, J., concurs in result only.