The TOLEDO and WABASH Railway Company *v.* SMITH.

DAMAGES.—EVIDENCE.—On the trial of an action for damages for killing a horse, the plaintiff introduced a witness who stated that he was acquainted with the value of horses, but had never seen the horse in controversy. The witness was then asked, "What, on the 10th day of *May*, (the day of the killing,) was the average price of a horse fifteen or sixteen hands high, three or three and one-half years old, and sound, except the ring bone on the hind foot, which had been killed?"

*Held*, that the court erred in permitting the witness to answer the question.

*Held*, also, that the value of the horse at the time of his death was the measure of damages. But it was competent for the defendant to show the condition of the horse by witnesses who had seen him at any reasonable time before the killing, ranging within three months, and then after proving by other witnesses that his condition was unchanged, the former might testify to the value of the horse at the time of the killing, on the hypothesis that his condition was the same as when they saw him.

APPEAL from the *Huntington* Circuit Court.

GREGORY, J.—*Darwin Smith* sued the railway company before a justice of the peace for killing a horse on the track of its road, where it ought to have been but was not fenced. The appellant offered, before the justice, to confess a judgment for $10 and costs of suit to the time of the offer.

This was declined by the appellee. Judgment by default before the justice. The company appealed to the Circuit Court. Trial by jury; verdict for the plaintiff for $60; motion for a new trial overruled, and judgment. The evidence is in the record. *Smith* swears that he was the owner of the horse; that the horse was in pasture near the track of the railway company; that the fence was down, and had been for a period of about two weeks; that the horse was found dead about six feet from the track; that he did not see him struck, but saw him dead soon afterward; that he had no marks or wounds upon him, only the hair was off, and there was hair along the track where he had been dragged; that the horse was worth $85; that he had the ring bone on the right hind leg, but that it was no injury to him; it would injure him for a long drive but not for common use; that he was not spavined; that when he bought him the ring bone was pretty bad, but that he had mostly cured him; that he had owned him some two months; that he was about three years old and sound, except the ring bone; that the pasture in which the horse was, contained eight or ten acres; that the fence was thrown down by high water; that the water remained up seven or eight days; that he was not a horse doctor; that no horse doctor had seen the horse, but that he had doctored the horse as he was told to do by Dr. *Strong.*

Dr. *Strong* swears that he is a doctor, and a veterinary surgeon; that the horse he saw had ring bone on his hind leg; that he thought it was a damage to the horse of about $5; that he was worth $60; that the fence along the track of the railway had been down some two or three weeks, and was still down after the horse was killed, at least a day or two; that he saw the horse, and thinks he understands horses and their diseases; that he declined to state what medicine he used in curing ring bone—that was a secret of his own; that he never did anything to the horse himself, but told *Smith* what to do; that he did not particularly examine the extent of the

The Toledo and Wabash Railway Company *v.* Smith.

ring bone when he saw the horse; that he told *Smith* how to use the remedy.

Mr. *Day* swore, that he was in the livery business; that he never saw the horse in question. The plaintiff then asked the witness the following question: " What, on *May* 10th, 1864, was the average price of a horse fifteen or sixteen hands high, three or three and a half years old, sound, except the ring bone on the hind foot, which had been killed?" The defendant objected to the question on the ground that it assumed facts not in evidence, and was too remote, the witness having never seen the horse, nor heard any description of him from which to inform the jury as to his value; but the court overruled the objection, and allowed the witness to testify that " the horse might have been worth, about the 10th of *May* last, from $60 to $80," to which the appellant excepted. This was the plaintiff's evidence.

The defendant then introduced Mr. *Good*, who swears that he saw the horse; that the ring bone was very bad; that he may have been worth $5, but he did not think him worth anything; that he was an employee of the defendant, and had had some difficulty with the plaintiff.

Mr. *Larabee* swears that he saw the horse at the sale, a month before his death; that the ring bone was a bad one. . The defendant then asked the witness the following question: "What was the horse worth in market at the time of the sale to defendant, about a month before his death?" The plaintiff objected to the question, and the court sustained the objection and refused to allow the witness to answer, to which the defendant excepted. This witness further testified, that *Smith* said to him that he paid eight or eight and a half dollars for the horse at the sale.

Mr. *Cheney* swears that he saw the horse the day of the sale, and again about a month before his death. That he had a ring bone, and a very bad one.

Mr. *Sullivan* swears that he saw the horse several times; that he had the ring bone badly in his hind foot; that it was grown out above the hoof all around, and looked red

and raw; that the last time he saw him was three weeks before his death. The defendant then asked the following question: "What was his value at that time, three weeks before his death?" To which the plaintiff objected, and the court refused to allow the question to be answered. The defendant excepted.

*William Tate* swears that he saw and examined the horse the *Sunday* before his death; that he was not then any better than he was when he first saw him, on the day of the sale; that he could not trot; that he whipped him round a little, but he moved slowly and with great difficulty; that his hind foot above the hoof was all raw, a place as big as his two hands, and swelled out beyond the hoof; that on the other hind leg he had the blood spavin; that he never saw or heard of a horse with either of these diseases cured sound; that the horse, as he was the *Sunday* before his death, would not fetch in the market more than four or five dollars; that he thought if the horse had lived a while longer he would have lost his hoof; that a horse with ring bone or spavin might be mended some, but never cured sound; that a bad ring bone, as that was, cannot be cured. That he examined the horse in the pasture when *Smith*, the owner, was present; that he showed him the spavin then, and told him he did not think the horse worth any thing; that he saw the horse shortly after he died; that he was lying ten or fifteen feet from the track of the railway; that he had no cuts or bruises on him; that the ring bone foot looked as bad as ever; that there was a severe thunder storm the night before, and the lightning was very sharp; that he did not know, but had his notion as to what killed him; that he did not see any hair on the railroad, nor any marks either on the track or on the horse to indicate that there had been any collision; that he examined particularly both the track and the horse; that there were, at the time, other horses in the same pasture; that he was an employee of the defendant.

*William Merom* swears that there were no marks on the horse of having been struck by the engine; that he examined him particularly immediately before his death, and he did not think with such a foot and leg as he had he was worth anything; that he saw some loose hair on the track a short distance from the horse, but no signs of a collision; that when the engine strikes an animal the marks, both on the animal and on the track, are easily seen; that he is an employee of defendant.

Mr. *Henderson* swears that he saw the horse after he was dead; that the sore on his hind leg looked very raw and was swelled up over his hoof; that in the condition the horse was with that ring bone, he was not worth five dollars; that he was no judge of the market value of horses; that he had never seen the horse living.

*John Kearns* swears that *Smith*, the plaintiff, told him the horse was spavined in the other leg, sometime before the death of the horse. This was the defendant's evidence. The plaintiff then recalled Dr. *Strong*, who, in rebutting, testified that the rawness spoken of was produced by the medicine, and was a sign of healing. He declined, however, to state what medicine was used. He further testified that ring bone can be cured; that he had cured many of them. This was all the evidence given in the cause.

It is insisted that the verdict is not sustained by the evidence. It is difficult to see how the jury came to the conclusion they did, but as the court below erred in overruling a motion for a new trial on another ground, we shall not reverse the judgment for this cause.

The court committed an error in allowing the witness, *Day*, to answer the question propounded to him by the appellee. *Paige* v. *Hazard*, 5 Hill's N. Y. R., 603.

The value of the horse at the time of his death was the measure of damages, and the court below, therefore, committed no error in refusing to permit the appellant to prove his value at any other time. It was competent for the

defendant to show the condition of the horse by witnesses who had seen him at any reasonable time prior to his death, ranging within three months, and then proving by other witnesses that his condition was unchanged, the former might testify to the value of the horse at the time of the injury complained of on this hypothesis.

The judgment is reversed, with costs, and the cause remanded, with directions to grant a new trial, and for further proceedings.

W. Z. Stuart, for appellant.