FILED

Jul 23 2018, 5:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Laura M. Nirenberg
E. Anne Benaroya
Trevor DeSane
Center for Wildlife Ethics
LaPorte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Melodie Liddle,

*Appellant-Plaintiff,*

v.

Cameron F. Clark, in his official capacity as Director of the Indiana Department of Natural Resources, Paul Sipples, as an individual and in his official capacity as Manager of Versailles State Park, and Harry Bloom,

*Appellees-Defendants.*

July 23, 2018

Court of Appeals Case No.
49A04-1707-MI-1662

Appeal from the Marion Superior Court

The Honorable Timothy W. Oakes, Judge

The Honorable Therese Hannah, Commissioner

Trial Court Cause No.
49D02-1306-MI-16812

**Shepard, Senior Judge.**

[1] Melodie Liddle's dog, Copper, died in a concealed animal trap in Versailles State Park. Liddle sued several state officials seeking damages. She also asked the trial court to declare invalid state-issued emergency rules governing trapping in state parks.

[2] The court awarded damages to Liddle for the loss of Copper, but she appeals the court's rulings on summary judgment limiting the calculation of damages and denying her request for declaratory judgment.[1]

## Facts and Procedural History

[3] Versailles State Park (VSP) sits on 5,988 acres in southeastern Indiana next to the city of Versailles. In the mid-2000s, the park received complaints from visitors about raccoons. Raccoon overpopulation may have been an issue throughout Indiana's state park system, as the Indiana Department of Natural Resources decided to facilitate trapping in its parks statewide. In November 2005, DNR issued an emergency rule that authorized park managers to permit individuals to trap raccoons during Indiana's official trapping season.

[4] DNR reissued the emergency rule on an annual basis from 2007 through 2013, reauthorizing park managers to permit raccoon and other animal trapping. Prior to 2012, the rule did not include any guidance on how traps should be placed or whether notice should be given to park visitors.

---

[1] We held oral argument in Indianapolis on June 8, 2018. We thank the parties for their presentations.

[5] Harry Bloom was a security officer at VSP and had extensive experience in trapping animals. Beginning in 2007, the park's manager authorized him to trap raccoons. Bloom installed his own traps during the December trapping season. He used lethal "bodygrip" style traps. Appellant's App. Vol. 2, p. 91.

[6] Bloom decided where to place the traps, concealing some of them in open-ended wooden boxes he had built. The park manager did not keep track of where Bloom put the traps. Bloom did not post signs to warn parkgoers because he was concerned about theft, having had seven traps stolen in VSP over the years. Between 2007 and 2013 he trapped 35 to 50 raccoons during trapping season. Bloom harvested the pelts from the raccoons and apparently sold them. *See id.* at 92 ("I processed the hides (furs) from these animals to partially compensate my time, equipment, and expenses incurred.").

[7] December 16, 2011, was an unseasonably warm day. Melodie Liddle drove to VSP with her two dogs to take a walk. One of the dogs, Copper, was a ten-year-old beagle mix. Liddle kept the dogs on leashes, and she walked on a paved road in the park. The dogs led Liddle off the road and down an embankment to a stream. At that point, Copper stuck her head in an open-ended wooden box and became caught in one of Bloom's traps. She cried out as the trap closed around her, drawing Liddle's attention. Liddle struggled for several minutes to free Copper while calling for help, but no one heard her. She could not pry open the trap, which had clamped down on Copper's neck. Copper died from suffocation.

[8] Liddle called a friend, Gene Beach, who arrived at the scene and removed Copper's body from the trap. Liddle went to the park office and found park manager Paul Sipples, who returned to the trap site with her and picked up the trap. When Liddle complained about the unmarked trap, Sipples stated that if they had put out warning signs, someone would have stolen the traps.

[9] Bloom removed the rest of the traps from the park that evening, and he has not used lethal traps at VSP since the incident. The versions of the emergency trapping rule that were issued in 2012 and 2013 banned the use of lethal body-gripping traps on dry land and required park staff to post notices warning visitors about trapping. *Id.* at 46-49.

[10] Liddle filed suit in June 2013, naming DNR Commissioner Cameron Clark, park manager Paul Sipples, and Harry Bloom as defendants. We refer to the defendants collectively as DNR. Liddle alleged DNR was negligent. She further requested declaratory judgment, specifically asking the court to declare the emergency rules void as unauthorized by DNR's statutory authority. DNR moved to dismiss Liddle's claim for declaratory judgment. In a February 12, 2014 order, the court granted DNR's motion in part, concluding Liddle's challenge to the 2012 and 2013 versions of the rule could proceed, but her challenge to prior versions of the rule was time-barred.

[11] Next, DNR filed a motion for partial summary judgment. On July 1, 2016, the court granted the motion, determining: (1) Sipples and Bloom were immune from personal liability under the Indiana Tort Claims Act because they acted

within the scope of their roles as employees; (2) Liddle's damages would be limited to Copper's fair market value at the time of death; and (3) Liddle's challenge to the 2012 and 2013 versions of the rule was moot.[2]

Both parties filed further motions, and the trial court held oral argument. On June 27, 2017, the court issued an order on the cross-motions for summary judgment, determining: (1) Liddle was entitled to summary judgment because DNR created an unreasonable risk of harm and failed to protect her and her property; (2) DNR was not entitled to summary judgment on its claim of contributory negligence; and (3) Liddle was entitled to $477.00 in damages, reflecting a calculation of Copper's fair market value as drawn from examples of beagle sales in Indiana that were submitted by the parties. This appeal followed.

## Discussion and Decision

Liddle presents two issues arising from the trial court's July 1, 2016 order granting partial summary judgment to DNR:

I.   Did the court err in ruling in favor of DNR on Liddle's request for declaratory judgment on the emergency trapping rules; and

II.  Did the court err in excluding sentimental value from the calculation of Liddle's damages?

---

[2] Liddle asked the court to certify the July 1, 2016 order for discretionary interlocutory appeal, and the court granted the request. On November 10, 2016, the Court of Appeals declined to accept jurisdiction over the interlocutory appeal. *Liddle v. Clark*, 49A02-1609-MI-2177 (Ind. Ct. App. Nov. 10, 2016).

# I. Standard of Review

A movant is entitled to summary judgment "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "Summary judgment imposes a heavy factual burden on the moving party— and a correspondingly light burden for the non-movant's response." *In re Ind. State Fair Litig.*, 49 N.E.3d 545, 548 (Ind. 2016).

We review summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000 (Ind. 2014). We construe all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party. *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906 (Ind. 2009). We review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Int'l Union of Police Assocs., Local No. 133 v. Ralston*, 872 N.E.2d 682 (Ind. Ct. App. 2007).

# II. Declaratory Judgment

Liddle asked the trial court to declare that DNR exceeded its statutory authority by issuing the emergency rules allowing park managers to permit commercial fur trapping. She specifically claims that allowing trappers to sell the fur that they harvested violated the law. Liddle acknowledges that our review is limited to the validity of the 2012 and 2013 versions of the emergency rule. Reply Br. p. 9, n.10.

[17]   The DNR argues that Liddle's challenge to the validity of the rules is moot.[3] We agree. A case becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered. *Save Our Sch. v. Ft. Wayne Cmty. Schs.*, 951 N.E.2d 244 (Ind. Ct. App. 2011), *trans. denied*.

[18]   Liddle's claim for declaratory relief focused on whether the emergency rules authorizing trapping in state parks violated governing statutes. The 2012 and 2013 versions of the rule have expired and are no longer in effect, as are any permits that park managers issued under those versions of the rule.

[19]   Further, Liddle concedes DNR has stopped using the emergency rule process to govern trapping in state parks. Appellant's Br. p. 22. Instead, in 2014, the General Assembly amended Indiana Code section 14-22-6-13 to permit the DNR director to "authorize the taking of a species" within a state park if the species poses a hazard to individuals or risk of damage to the park's ecological balance. 2014 Ind. Acts 2827. The director shall make the decision pursuant to "rules adopted under IC 4-22-2." *Id*. Liddle's challenge to the validity of the emergency rules is no longer live, and any decision we might issue as to the rules would be purely advisory.

---

[3] DNR also claims Liddle lacks standing to challenge the 2012 and 2013 versions of the emergency rule because Copper's death occurred in 2011, before those versions took effect. Because we dispose of the issue on mootness grounds, we need not address this claim.

[20]     Liddle argues the issue of fur trapping for profit is not moot because the alleged misconduct—allowing trappers to sell the furs they harvest in state parks, in violation of statutory authority—is ongoing. That may be so, but Liddle presented her claim in the context of the emergency rules, asking the trial court and this Court to compare the text and application of these rules to DNR's statutory authority. Any trapping that occurs pursuant to the director's authority under Indiana Code section 14-22-6-13 and associated rules raises different statutory questions and different facts.

[21]     Liddle further argues that even if the Court deems her claim for declaratory relief to be moot, the Court should nonetheless address her claim because it pertains to a recurring issue of great public importance. Indiana courts may adjudicate a moot claim on the merits "upon the existence of three elements: the issue concerns a question of great public importance which is likely to recur in a context which will continue to evade review." *DeSalle v. Gentry*, 818 N.E.2d 40, 49 (Ind. Ct. App. 2004).

[22]     Liddle's specific claim—that DNR wrongfully promulgated emergency rules permitting fur trapping for profit, in violation of statutory authority—is unlikely to recur. Further, to the extent that Liddle wishes to challenge the general practice of trapping for profit in Indiana's public parks, if DNR continues to allow trapping under Indiana Code section 14-22-6-13 then the issue will not evade judicial review but will instead arise in the future. For these reasons, we decline to apply the public interest exception, and we affirm the trial court's determination that Liddle's claim for declaratory relief is moot.

# III. Damages

[23] Liddle argues the trial court erred in limiting her damages to Copper's fair market value, claiming sentimental value should have been included in the calculation.

[24] Damages directly attributable to the wrong done are recoverable. *Greives v. Greenwood*, 550 N.E.2d 334 (Ind. Ct. App. 1990). Damages may not be awarded on guess or speculation, but must be ascertainable with reasonable certainty. *Id.* In general, damages for the destruction of personal property are measured by the fair market value of the property at the time of the loss. *Ridenour v. Furness*, 546 N.E.2d 322 (Ind. Ct. App. 1989).

[25] Regarding pets, there are jurisdictions that have determined that sentimental value may be included in calculating damages arising from the death of a pet, by statute or judicial decision. *See, e.g.*, Tenn. Code Ann. § 44-17-403 (2007) (allowing up to $5,000 in "noneconomic damages" for the negligent death of one's pet, subject to certain restrictions); 510 Ill. Comp. Stat. Ann. 70/16.3 (2008) (authorizing damages, including for "emotional distress," arising from the death of one's pet); *Brousseau v. Rosenthal*, 443 N.Y.S. 2d 285 (N.Y. Civ. Ct. 1980) (affirming award for emotional damages suffered by pet owner arising from pet's death due to negligence).[4]

---

[4] Recent academic debate features opposing perspectives. *See, e.g.,* Lauren M. Sirois, Comment, *Recovering for the Loss of a Beloved Pet: Rethinking the Legal Classification of Companion Animals and the Requirements for Loss of Companionship Tort Damages*, 163 U. Pa. L. Rev. 1199 (2015) (arguing that loss of companionship damages

By contrast, Indiana has long held that animals are personal property, and the fair market value of the animal at the time of loss is the appropriate basis for calculating damages. *See Toledo & Wabash Ry. Co. v. Smith*, 25 Ind. 288 (1865) (market value of horse at time of death was the measure of damages); *Jacquay v. Hartzell*, 1 Ind. App. 500, 27 N.E. 1105, 1105 (1891) ("One who willfully and maliciously kills a dog which is not vicious or dangerous in its disposition and habits, and is not engaged in committing damages, is liable to the owner for the fair value of the animal."); *Moorman Mfg. Co. v. Barker*, 110 Ind. App. 648, 40 N.E.2d 348 (1942) (measure of damages was fair market value of sows before and after harm occurred); *Ridenour*, 546 N.E.2d 322 (assessing value of erroneously caught sport fish); *Star Bank, N.A. v. Laker*, 637 N.E.2d 805 (Ind. 1994) (fair market value of a horse was the proper measure of damages); *Harlan Sprague Dawley, Inc. v. S.E. Lab Group, Inc.*, 644 N.E.2d 615 (Ind. Ct. App. 1994) (lab entitled to full market value of lab rats destroyed by defective equipment), *trans. denied*.

[27] The Court most recently addressed this issue in *Lachenman v. Stice*, 838 N.E.2d 451 (Ind. Ct. App. 2005), *trans. denied*. Lachenman owned a terrier, but other dogs that belonged to neighbors, the Stices, attacked and killed the terrier. The trial court determined Lachenman's damages would be limited to the terrier's

should be expanded to cover companion animals); Victor E. Schwartz and Emily J. Laird, *Non-Economic Damages in Pet Litigation: The Serious Need To Preserve a Rational Rule*, 33 Pepp. L. Rev. 2 (2006) (arguing that allowing non-economic damages in pet cases is bad public policy and will ultimately harm rather than help pets).

purchase price and to veterinary bills. On appeal, Lachenman argued he should be allowed to present evidence of value other than fair market value. The Court wrote: "However unfeeling it may seem, the bottom line is that a dog is personal property, and the measure of damages for the destruction of personal property is the fair market value thereof at the time of the destruction." *Id.* at 467. Thus, sentimental value was not a factor in calculating damages.

[28] We are constrained to follow precedent and to conclude the trial court did not err in limiting Liddle's damages to Copper's fair market value. Further, even if we were deciding from a clean slate whether sentimental damages should be recoverable for the death of a pet due to negligence, it would be difficult to determine where to draw the line. Would all types of pets be included? Which individuals would be entitled to recover such damages for the loss of a pet? As the Wisconsin Supreme Court said in denying recovery for emotional distress arising from the killing of a pet, "allowance of recovery would enter a field that has no sensible or just stopping point." *Rabideau v. City of Racine*, 243 Wis. 2d 486, 500, 627 N.W.2d 795, 802 (2001).

[29] Liddle cites to the Court's decision in *Campins v. Capels*, 461 N.E.2d 712 (Ind. Ct. App. 1984). It was a case with very different facts. A burglar took several items of gold jewelry from Capels' home and sold them to a gold dealer, Campins, who melted them down. Capels sued Campins, claiming he knew or should have known the jewelry was stolen. The trial court determined Campins was liable for the destruction of one wedding ring and three award rings Capels received for his work in the auto racing industry.

On appeal, Campins challenged the trial court's valuation of the award rings at $1,000 each, claiming those valuations were well above their fair market value. A panel of this Court determined the award rings were not "ordinary jewelry" but rather "coveted awards and symbols of certain achievements accomplished by very few." *Id.* at 720. As a result, the Court concluded the rings "should be valued differently than other jewelry." *Id.* Thus, "sentimental value" could be considered for items such as heirlooms, family papers and photographs, handicrafts, and trophies. *Id.* at 721.

We conclude the holding in *Campins* does not control here because the Court intended for its decision to apply to inanimate items whose special origin would likely add actual value. Where pets are concerned, we follow Indiana's longstanding precedent limiting recovery to the pet's fair market value.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Vaidik, C.J., and Brown, J., concur.